STOEBERMANN et al., Appellants,

v.

BEACON JOURNAL PUBLISHING CO., Appellee.

[Cite as *Stoebermann v. Beacon Journal Publishing Co.*, 177 Ohio App.3d 360, 2008-Ohio-3769.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 23756.

Decided July 30, 2008.

Dennis R. Thompson and Christy B. Bishop, for appellants.

Karen C. Lefton;  and Ronald S. Kopp, for appellee.

D ICKINSON, Judge.

## INTRODUCTION

{¶ 1} The Beacon Journal Publishing Company terminated Michael Attalla as one of its independent-contractor newspaper carriers after he refused to deliver

Kiwanis emergency medical flyers to all the households along his routes. It terminated Janet Stoebermann after a substitute she arranged refused to deliver copies of the Wall Street Journal. The trial court granted summary judgment to the Beacon Journal on Attalla's claims because it determined that there were no genuine issues of material fact and that the Beacon Journal was entitled to judgment as a matter of law on his breach-of-contract claim. Following a bench trial, the court determined that the Beacon Journal had breached its contract with Stoebermann and awarded her the amount it owed her for November 1, 2000, to November 14, 2000, and 14 days of lost profits under their contract's liquidated-damages provision. This court affirms in part because Attalla breached his contract and because Stoebermann's contract limits the damages she may recover for termination without prior notice to 14 days of profits. This court reverses in part because the trial court incorrectly concluded that Stoebermann was not entitled to prejudgment interest.

### FACTS

{¶ 2} Attalla began delivering papers for the Beacon Journal in 1989. In 1998, he entered into a one-year contract that provided that he "agree[d] to deliver such daily copies of *'The Beacon Journal'* newspaper (and all supplements thereto), as well as any other publications as may from time to time be given to [him] by the [Beacon Journal] for delivery to subscribers during the term of this Agreement." It also provided that the Beacon Journal could terminate him without advance notice if he breached the contract.

{¶ 3} Stoebermann began delivering newspapers for the Beacon Journal in 1975. At first she had only a single route, but over time she acquired additional routes. In March 1999, she entered into a one-year contract with the Beacon Journal regarding several of those routes. The contract provided that she "agree[d] to deliver such daily copies of *'The Beacon Journal'* newspaper (and all supplements thereto), as well as any other publications as may from time to time be given to [her] by the [Beacon Journal] for delivery to subscribers during the term of this Agreement." It provided that she would receive nine cents for each daily copy and 30 cents for each Sunday edition delivered. It provided that either party could terminate the contract for any reason upon 30 days written notice. It also contained a "Termination of Contract Due to Breach" provision, which provided that either party could terminate the contract at any time if "a party breaches the Agreement." That provision also stated that "a breach of this Agreement by the [Beacon Journal] shall occur if: the [Beacon Journal] refuses to sell [Stoebermann] *'The Beacon Journal'* for delivery within [her] delivery area * * *." The contract further provided that "[i]f the [Beacon Journal] elects to terminate this Agreement during its term without 30 days' notice, for reasons

other than a breach of this Agreement by [Stoebermann], the [Beacon Journal] must pay [her] the sum of 14 days paper profit as liquidated damages * * *."

{¶ 4} A few months after Stoebermann signed the contract, the Beacon Journal began requiring her to deliver the Wall Street Journal, which is an independent paper not published by the Beacon Journal. It paid her only nine cents for each copy she delivered, even though it was more onerous to deliver than the Beacon Journal. Not only was the Wall Street Journal heavier, increasing the wear and tear on Stoebermann's vehicles, but each copy was individually labeled and had to be delivered to a specific address. The Beacon Journal required Stoebermann to deliver the Wall Street Journal to anyone who subscribed to it along her routes, even if they did not subscribe to the Beacon Journal. Because of the extra burden, she had to give up some of her Beacon Journal routes.

{¶ 5} Stoebermann and Attalla also delivered newspapers for the Plain Dealer. On November 13 and 14, 2000, they had to attend a meeting regarding a new Plain Dealer route and, therefore, had Attalla's son deliver their papers for them. Those same days, the Beacon Journal ordered its carriers for Bath, including Attalla, to deliver Kiwanis emergency medical flyers to all of the households in that city. Attalla did not believe he was required to deliver the flyers and instructed his son not to deliver them. On November 14, Attalla's son refused to deliver the Wall Street Journal to anyone along Stoebermann's routes. Concluding that Stoebermann and Attalla had breached their contracts, the Beacon Journal terminated them.

{¶ 6} On November 16, 2004, Stoebermann and Attalla filed a complaint against the Beacon Journal alleging breach of contract, tortious interference with contract, and tortious interference with business. On January 6, 2004, the trial court granted the Beacon Journal summary judgment on the tortious-interference claims and Attalla's breach-of-contract claim. Regarding Attalla's breach-of-contract claim, the court determined that the parties had continued to act under their 1998 contract and that the Kiwanis flyers were "other publications" under the terms of that contract. Although the terms of the contract did not require him to deliver the flyers to nonsubscribers, because he had failed to deliver the flyers to anyone, he had breached his contract and the Beacon Journal had the right to terminate him without prior notice.

{¶ 7} Following a bench trial on Stoebermann's breach-of-contract claim, the court determined that even though the contract Stoebermann signed was for one year, the parties had mutually extended it. It also determined that the contract did not require Stoebermann to deliver the Wall Street Journal. The Beacon Journal, therefore, breached the contract when it required her to deliver the Wall Street Journal to households along her routes and when it terminated her for failing to deliver it. Regarding damages, the trial court determined that the

Beacon Journal had not paid Stoebermann for the first two weeks of November 2000. It further determined that the contract's liquidated-damages provision applied. Accordingly, the court awarded her $273.63 for the amount owed her for November 1, 2000, to November 14, 2000, and $746.62 for 14 days of lost profits. Stoebermann and Attalla have appealed, assigning five errors.

## SUMMARY JUDGMENT

{¶ 8} Attalla's sole assignment of error is that the trial court incorrectly granted the Beacon Journal summary judgment on his breach-of-contract claim. He has argued that the Kiwanis flyers were not contemplated by his contract and that the Beacon Journal breached their contract when it required him to deliver the flyers to households that did not subscribe to the Beacon Journal. In reviewing a trial court's ruling on a motion for summary judgment, this court applies the same standard a trial court is required to apply in the first instance: whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121.

{¶ 9} Attalla has not challenged the trial court's conclusion that the contract he signed with the Beacon Journal in 1998 governed his claim. In that contract, Attalla "agree[d] to deliver such daily copies of *'The Beacon Journal'* newspaper (and all supplements thereto), as well as any other publications as may from time to time be given to [him] by the [Beacon Journal] for delivery to subscribers during the term of this Agreement." He also agreed that if he "fails and/or refuses to deliver newspapers (or any other publications) within [his] delivery area," his actions would constitute a breach of the contract and the Beacon Journal could terminate him without advance notice.

{¶ 10} There is no genuine issue of material fact that the Kiwanis flyers were "other publications as may from time to time be given to [Attalla]" under the terms of the contract. There is also no genuine issue of material fact that Attalla instructed his son not to deliver them to anyone, not even Beacon Journal subscribers. Accordingly, the trial court correctly concluded that Attalla breached his contract and, therefore, that the Beacon Journal could terminate him without advance notice. Attalla's assignment of error is overruled.

## LIMITATION OF DAMAGES

{¶ 11} Stoebermann's first assignment of error is that under the unambiguous terms of the March 1999 contract, the trial court incorrectly limited her damages to 14 days of profits. Specifically, she has argued that because the Beacon Journal breached the contract, its liquidated-damages provision does not apply.

{¶ 12} The interpretation of a contract is a question of law that this court reviews de novo. *Ignazio v. Clear Channel Broadcasting, Inc.*, 113 Ohio St.3d 276, 2007-Ohio-1947, 865 N.E.2d 18, at ¶ 19. "[C]ommon words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 245–246, 7 O.O.3d 403, 374 N.E.2d 146. "[W]here the terms in an existing contract are clear and unambiguous, [a] court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." Id. at 246, 7 O.O.3d 403, 374 N.E.2d 146.

{¶ 13} The contract had three termination provisions. The first allowed either party to terminate the contract for any reason upon 30 days notice. The second allowed either party to terminate the contract immediately if the other party breached it. The third provided that if a party terminated the contract without 30 days notice or a breach by the other party, that party would have to pay liquidated damages.

{¶ 14} In its letter to Stoebermann, the Beacon Journal wrote that it was terminating her without 30 days' notice because she had breached the contract. The trial court concluded, however, that it was the Beacon Journal, not Stoebermann, that had breached the contract by requiring her to deliver the Wall Street Journal. Under the contract's second termination provision, the Beacon Journal's breach gave Stoebermann the right to terminate the contract without providing 30 days' notice. Because the Beacon Journal had already terminated Stoebermann, however, that provision was not relevant.

{¶ 15} The trial court determined that because the Beacon Journal had breached the contract and terminated Stoebermann without 30 days' notice or a breach on her part, the contract's third termination provision applied. Under that provision, the Beacon Journal agreed to pay Stoebermann "14 days paper profit as liquidated damages." The trial court, therefore, limited Stoebermann's lost-profits damages to 14 days.

{¶ 16} The trial court correctly concluded that the third termination provision applied. The Beacon Journal terminated Stoebermann the same day that her substitute refused to deliver the Wall Street Journal, even though that was not required under her contract. The Beacon Journal, therefore, elected to terminate Stoebermann's contract "without 30 days' notice, for reasons other than a breach" by her. Stoebermann has failed to show that the plain language of that provision does not apply to her breach-of-contract claim.

{¶ 17} The trial court also correctly concluded that under that provision's liquidated-damages clause, Stoebermann was entitled to only 14 days of lost

profits. "[C]lauses in contracts providing for reasonable liquidated damages are recognized in Ohio as valid and enforceable." *Samson Sales, Inc. v. Honeywell, Inc.* (1984), 12 Ohio St.3d 27, 28, 12 OBR 23, 465 N.E.2d 392. Stoebermann has not argued that the liquidated-damages provision is unreasonable or that the trial court miscalculated her damages under it. She has, therefore, abandoned any error regarding those issues. See *State v. Chapman,* 9th Dist. No. 06CA009038, 2008-Ohio-726, 2008 WL 482542, at ¶ 9.

{¶ 18} Stoebermann has argued that "when a defendant is the breaching party to a non-exclusive, continuing contract, it is improper to limit recovery to the notice period included in a provision of the agreement relating to termination without breach." Although she has asserted that the Beacon Journal argued in its posthearing brief that its damages should be limited to the 30–day notice period, she has conceded that the trial court ignored that argument in its opinion. Her first assignment of error is overruled.

## LIQUIDATED DAMAGES

{¶ 19} Stoebermann's second assignment of error is that the trial court incorrectly failed to award her future lost profits based on the continuing and nonexclusive nature of the contract. She has argued that because the trial court found that she had a continuing contract with the Beacon Journal, she also should have been entitled to lost-volume profits.

{¶ 20} In *Young v. Washington Local School Dist. Bd. of Edn.* (1993), 85 Ohio App.3d 37, 40, 619 N.E.2d 62, the court noted that "[i]t is a long-established rule, and a good one, that where a contract ends but the parties continue to act according to its terms, they are deemed to have acquiesced in all of the terms of a contract." In those situations, the law presumes that the parties' contract continues for another term. Id. at 40–41, 619 N.E.2d 62.

{¶ 21} Citing *Young,* the trial court determined that Stoebermann and the Beacon Journal had extended the March 1999 contract. Applying *Young* to the facts of this case, the March 1999 contract, therefore, renewed in April 2000 for another full year. Accordingly, when the Beacon Journal terminated Stoebermann in November 2000, five months remained on the contract.

{¶ 22} The Beacon Journal has argued that Stoebermann cannot recover for five months of lost profits because the contract let either party terminate it at any time with 30 days' notice. Stoebermann, on the other hand, has argued that the Beacon Journal cannot use the notice provision to limit its damages, citing *Charles R. Combs Trucking, Inc. v. Internatl. Harvester Co.* (1984), 12 Ohio St.3d 241, 244, 12 OBR 322, 466 N.E.2d 883.

{¶ 23} In *Combs,* a sand and gravel hauler ordered two trucks from a manufacturer that failed to deliver them on time, causing Combs to forfeit its seniority at a gravel pit. Id. at 242–243, 12 OBR 322, 466 N.E.2d 883. Combs sued the manufacturer, and the Supreme Court of Ohio concluded that, even though the gravel pit had the right to terminate its relationship with Combs on ten days' advance notice, that provision did not limit Combs's damages against the manufacturer. Id. at 244, 12 OBR 322, 466 N.E.2d 883.

{¶ 24} *Combs* is distinguishable because the dispute in that case was between Combs and the truck manufacturer, not Combs and the gravel pit. In fact, there was no indication that the contract between Combs and the gravel pit had been terminated by either party. This case more closely resembles *Klein v. Antioch Univ.* (Dec. 5, 1984), 2d Dist. No. 83CA95, 1984 WL 3257 at *7, in which an administrative dean was discharged "without the 90 day notice of termination required by the regulations for such employees." The trial court awarded him $61,265 in damages, although it was unclear how it had calculated those damages. Noting that "[t]he damages awarded [were] disproportionate to the failure to give notice," the court reversed the trial court's damage award. Id.

{¶ 25} Even though there were five months remaining on the contract, because the Beacon Journal had the right to terminate the parties' contract upon 30 days' notice, the amount Stoebermann can recover for lost profits is limited to 30 days. Furthermore, because the contract provided that "[b]oth parties * * * expressly agree that [Stoebermann's] potential damages are not readily ascertainable" and "that [14 days' paper profits] are a reasonable approximation of potential damages [she] would experience as a result of not receiving 30 days' notice," this court concludes that the trial court correctly limited her recovery to the amount it owed her for November 1, 2000, to November 14, 2000, and 14 days of lost profits.

{¶ 26} Stoebermann has also argued that she is not required to mitigate her damages. The trial court, however, did not conclude that Stoebermann was required to mitigate her damages. Stoebermann's second assignment of error is overruled.

## QUANTUM MERUIT

{¶ 27} Stoebermann's third assignment of error is that the trial court incorrectly denied her damages in quantum meruit for her delivery of the Wall Street Journal. She has argued that because she never signed an agreement regarding that paper, equitable principles govern the rate of her compensation. She has further argued that because the market value for delivering the Wall Street Journal was 28 cents, but she received only nine cents, the Beacon Journal has been unjustly enriched.

{¶ 28} Stoebermann's argument, essentially, is that the trial court's denial of her quantum meruit claim was against the manifest weight of the evidence. In *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, at ¶ 24, the Ohio Supreme Court held that the test for whether a judgment is against the weight of the evidence in civil cases is different from the test applicable in criminal cases. According to the Supreme Court in *Wilson,* the standard applicable in civil cases "was explained in *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578." Id. The "explanation" in *C.E. Morris* was that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Id. (quoting *C.E. Morris Co.,* 54 Ohio St.2d at 279, 8 O.O.3d 261, 376 N.E.2d 578); but see *Huntington Natl. Bank v. Chappell,* 9th Dist. No. 06CA008979, 2007-Ohio-4344, 2007 WL 2409795, at ¶ 17–75 (Dickinson, J., concurring).

{¶ 29} To establish a claim of quantum meruit, Stoebermann had to "show that [s]he conferred a benefit upon [the Beacon Journal] and that the circumstances render[ed] it unjust and inequitable to permit the [Beacon Journal] to retain the benefit without making payment therefor." *Natl. City Bank v. Fleming* (1981), 2 Ohio App.3d 50, 57, 2 OBR 57, 440 N.E.2d 590. She also had to "prove the reasonable value of the services rendered." *Watterson v. King,* 166 Ohio App.3d 704, 2006-Ohio-2305, 852 N.E.2d 1278, at ¶ 16 (citing *Fox & Assoc. Co., L.P.A. v. Purdon* (1989), 44 Ohio St.3d 69, 72, 541 N.E.2d 448).

{¶ 30} Stoebermann testified that before the Beacon Journal took over delivery of the Wall Street Journal, the Wall Street Journal paid its carriers 25 cents per copy. Attalla testified that the Wall Street Journal paid its carriers 28 cents per copy. Daniel Lias, the Beacon Journal's Home Delivery Manager, testified that the Beacon Journal received 28 cents for each copy it delivered. He also testified that each day, it had to manually input a large Dow Jones list into its system, create a manifest for its carriers, identify the route each customer was on, distribute the papers to the correct carriers for delivery, and send a report back to Dow Jones.

{¶ 31} The trial court's conclusion that Stoebermann was not entitled to damages under quantum meruit was not against the manifest weight of the evidence. Although Stoebermann established that the Beacon Journal received 28 cents for each Wall Street Journal it delivered, it was reasonable for the Beacon Journal to retain some of that income to pay for its administrative expenses. It was also undisputed that Stoebermann delivered the Wall Street Journal only along routes she already had to travel to deliver the Beacon Journal and that some of the households that received the Wall Street Journal also received the Beacon Journal. Accordingly, even though the Monday edition of

the Wall Street Journal was heavier than a daily copy of the Beacon Journal, and even though the Wall Street Journal was labeled for delivery to specific addresses, Stoebermann has not established that the nine-cent-per-copy rate that the Beacon Journal paid her was unjust. Her third assignment of error is overruled.

## PREJUDGMENT INTEREST

{¶ 32} Ms. Stoebermann's fourth assignment of error is that the trial court incorrectly denied her prejudgment interest on her damages. "The trial court's authority to award prejudgment interest on a breach of contract claim is governed by R.C. 1343.03(A), which provides, in relevant part, that a creditor is entitled to interest at the statutory rate 'when money becomes due and payable upon any * * * instrument of writing * * * and upon all judgments * * * of any judicial tribunal for the payment of money arising out of * * * a contract or other transaction.'" *RPM, Inc. v. Oatey Co.,* 9th Dist. Nos. 3282–M and 3289–M, 2005-Ohio-1280, 2005 WL 663057, at ¶ 61, quoting R.C. 1343.03(A).

{¶ 33} The determination whether to award prejudgment interest normally rests within the trial court's sound discretion. *Tummino v. Gerber* (1997), 121 Ohio App.3d 518, 520, 700 N.E.2d 382. This court has concluded, however, that "once a plaintiff receives judgment on a contract claim, the trial court has no discretion but to award prejudgment interest under R.C. 1343.03(A)." *Zeck v. Sokol,* 9th Dist. No. 07CA0030–M, 2008-Ohio-727, 2008 WL 495481, at ¶ 44 (quoting *Zunshine v. Cott,* 10th Dist. No. 06AP–868, 2007-Ohio-1475, 2007 WL 926969, at ¶ 25). "The only issue for resolution by a trial court with respect to prejudgment interest under R.C. 1343.03(A) is how much interest is due." *Zunshine,* 2007-Ohio-1475, 2007 WL 926969, at ¶ 26. The trial court, therefore, erred when it concluded that Stoebermann "has no entitlement to recover prejudgment interest." Her fourth assignment of error is sustained.

## CONCLUSION

{¶ 34} The trial court properly determined that the Beacon Journal was entitled to summary judgment on Attalla's breach-of-contract claim, that Stoebermann was limited to 14 days of lost profits on her breach-of-contract claim, and that Stoebermann was not entitled to recover for quantum meruit. The trial court erred, however, when it concluded that Stoebermann was not entitled to prejudgment interest on her breach-of-contract claim. The judgment of the Summit County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded for further proceedings regarding the issue of prejudgment interest, consistent with this opinion and the law.

Judgment affirmed in part
and reversed in part,
and cause remanded.

MOORE, J., concurs.

CARR, P.J., dissents in part.

CARR, Presiding Judge, dissenting in part.

{¶ 35} I respectfully dissent in regard to the majority's resolution of Stoebermann's first assignment of error. While I agree that the termination provisions in the contract are not ambiguous, it is for precisely that reason that I disagree with the majority's application of the third termination provision to the situation at hand.

{¶ 36} The first termination provision allows either party to terminate the contract for any reason without recourse with 30 days' notice to the other party. The third provision, which both the trial court and the majority here found applicable, addresses termination by a party when no breach or notice has occurred. In recognition of the fact that the nonterminating party will suffer some harm as a result of the untimely termination by the other, the parties have agreed to an award of liquidated damages to the nonterminating party. I find it significant that the contract recognizes that either the contractor or the publisher may be harmed by such a termination by the other party. What the contract makes clear is that the liquidated damages serve to compensate a party who has not received sufficient notice of termination, presumably the period of notice that would allow the contractor to seek alternate employment or allow the publisher to seek alternate means of delivery of its goods. The third provision, however, does not attempt to provide a remedy for a wrongful breach by the terminating party.

{¶ 37} In this case, the publisher was found to have breached the contract by wrongfully terminating Stoebermann. Only one provision addresses termination in the face of breach. The second termination provision permits either party to terminate the contract at any time, without notice, in the event of the other party's breach. That provision, however, does not exclusively limit the nonbreaching party's remedy to being excused from further performance. Termination under that provision would necessarily allow the nonbreaching party to seek ordinary damages for breach of contract. By the plain and unambiguous language of the contract, I would find this second provision applicable under the facts here, where the publisher has breached the contract. Accordingly, I believe that the trial court erred when it limited Stoebermann's damages to 14 days of lost profits as liquidated damages, when the liquidated-damages provision was inapplicable.