**In re ESTATE OF KIRKLAND.**

[Cite as *In re Estate of Kirkland*, 175 Ohio App.3d 73, 2008-Ohio-421.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 2006 CA 129.

Decided Feb. 1, 2008.

74

Lawrence J. Hofbauer, pro se.

Marc N. Greenberg, for appellant, Estella F. Young.

DONOVAN, Judge.

{¶ 1} Defendant-appellant, Estella F. Young, appeals a decision in which the Clark County Court of Common Pleas, Probate Division, ruled in favor of plaintiff-appellee Lawrence J. Hofbauer, administrator of the estate of Mary E.

Kirkland (hereinafter "the decedent"), pursuant to a complaint for declaratory judgment filed on July 18, 2006. The complaint requested that funds previously held in a National City Bank money market savings account belonging to the decedent be immediately returned. In response, Young filed an answer in which she requested that the complaint be dismissed and that she be declared the surviving joint owner of the money market account in which the funds had been located. In the alternative, Young asserted that the funds were rightfully hers as reasonable compensation for services rendered to the deceased.

{¶ 2} The matter was tried to the probate court on October 30, 2006. The probate court subsequently issued its written decision on November 15, 2006, in which it found that Young had no possessory interest in the savings account and ordered Young to return the funds that she had wrongfully withdrawn from the savings account, which amounted to $166,622.30. However, the court held that because of the services she rendered to the deceased over a time frame of roughly ten years, Young was entitled to total compensation of $40,000, or $4,000 per year. Thus, the court ordered Young to return $126,622.30 to the estate of the decedent.

{¶ 3} Young filed a timely notice of appeal with this court on November 30, 2006.

I

{¶ 4} According to the testimony of Young, she and her family became friends of the decedent and her husband in 1976 when they became neighbors on Skinner Lane in Springfield, Ohio. Over the next two decades, Young developed a very close relationship with the decedent and her husband and also performed various household tasks for the couple, which included grocery shopping, cooking, organizing medications, and taking them to appointments. The court found that the testimony adduced during the hearing demonstrated that the time frame in which these services were rendered spanned over a period falling between six and 15 years.

{¶ 5} Following the death of her husband in April 2001, the decedent opened two accounts at National city Bank, a checking account and the money market savings account at issue in the present appeal. The decedent was the sole owner of both accounts.

{¶ 6} On November 7, 2003, the decedent appointed Young her agent through a general power of attorney that gave Young the power to withdraw funds from either account. Further, on November 13, 2004, the decedent transferred the checking account from sole ownership in her name to a joint account with rights of survivorship with Young. As appellee points out and the probate court found,

the record is devoid of any documentation demonstrating that the decedent also transferred the savings account from a sole ownership into a joint account as Young alleges.

{¶ 7} Pursuant to the power of attorney, on July 19, 2005, Young withdrew $21,252.29 from the savings account. Young testified that she believed this money was hers, and she used the funds for her own purposes. On August 22, 2005, Young withdrew funds from the savings account, totaling $14,021.25. Once again, Young testified that she used this money for her own purposes and not those of the decedent. On November 4, 2005, Young withdrew $121,348.76 from the savings account and purchased a certificate of deposit ("CD") in the same amount at National City Bank. Young named herself as sole owner of the CD.

{¶ 8} On December 8, 2005, the decedent died intestate. One day later, Young withdrew approximately $10,000 from the savings account pursuant to the power of attorney, which, according to bank personnel, should have terminated by operation of law immediately following the death of the decedent. Although Young averred in her answer to plaintiff's complaint that she used the $10,000 for the decedent's funeral expenses, the record demonstrates that the funeral expenses had already been prepaid by the decedent upon death.

{¶ 9} The probate court found that from July 19, 2005, to December 9, 2005, Young wrongfully withdrew $166,622.30 from the money market savings account of the decedent. In addition to the $10,000 that Young was completely without authority to withdraw, Young's withdrawal of the remaining $156,622.30 pursuant to the power of attorney was also unlawful because she did so for her own benefit. The court noted that while the decedent may have wanted Young to inherit her entire estate upon her death, she did not taker the proper legal steps to effectuate the alleged promise.

{¶ 10} However, the court held that because of the services Young rendered to the decedent over a time frame of approximately ten years, she was entitled to total compensation of $40,000, or $4,000 per year. The court thus ordered Young to return the funds that she had wrongfully withdrawn from the savings account, totaling $126,622.30.

{¶ 11} It is from this judgment that Young now appeals.

## II

{¶ 12} Young's first assignment of error is as follows:

{¶ 13} "As a matter of law, the trial court erred by ignoring the intent of the deceased with regard to her money market account despite finding that she did in fact intend for said account to be a joint account with rights of survivorship with Estella Young."

{¶ 14} In her first assignment, Young contends that the probate court erred when it held that she was not entitled to the funds in the money market savings account because the decedent did not take the proper legal steps necessary to effectuate such a transaction. Specifically, Young argues that the evidence adduced at the hearing demonstrates that the decedent intended that Young should receive the proceeds from the savings account upon her death in light of the many years of service and friendship provided to the decedent by Young. Young further asserts that the decedent's intent in this regard overrides any failure on her part to formally have Young made a co-owner of the savings account with rights of survivorship. Thus, Young argues that upon the death of the decedent, the remaining funds in the savings account automatically passed to her by operation of law based on the intent of the decedent.

{¶ 15} In support of her assertion that the decedent intended that the savings account be a joint account with rights of survivorship, Young cites *In re Hatch's Estate* (1950), 154 Ohio St. 149, 152, 42 O.O. 218, 93 N.E.2d 585, in which the court held, "[T]he creation of a joint and survivorship bank account is a matter of intention to be ascertained from the conduct and actions of the persons concerned." *Hatch* further stated that when an account appears on bank records as a joint and survivorship account, and the decedent takes no affirmative action during her life to impair, alter, or nullify the agreement, a joint account is created and the proceeds will vest in the survivor on the account. In *Hatch*, appellant's mother owned a bank account with approximately $2,000 remaining in it at the time of her death. Prior to her death, the mother executed certain documentation that clearly made the appellant daughter a co-owner of the bank account with a right of survivorship.

{¶ 16} Young does not dispute, however, that neither she nor National City Bank was able to produce any documentation establishing that the decedent, at any time, made Young a co-owner of the savings account. The only documentation produced at the hearing demonstrated that the decedent executed certain changes in her accounts wherein Young was given power of attorney on both the checking and the savings account. Additionally, documentation was produced that established that the decedent had made Young a co-owner of the checking account with a right of survivorship. No documentation exists, however, that demonstrates that the decedent requested that Young be made a co-owner of the savings account with a right of survivorship.

{¶ 17} However, Young claims that actions taken by the bank in regard to the savings account clearly establish that the decedent not only intended to make her a co-owner of the savings account, but actually took the proper steps in order to effectuate her intent. Specifically, Young points out that the bank had placed the savings account under her Social Security number. Moreover, in 2005, Young

received a 1099 tax form from the government requiring her to pay taxes on the interest earned on funds in the savings account. Young argues that this evidence clearly establishes that she held an ownership interest in the savings account and is, therefore, entitled to the remaining funds.

{¶ 18} The testimony of bank personnel, however, indicates that the savings account was erroneously transferred to Young on December 15, 2005, following the death of the decedent. When the bank realized its mistake, it immediately transferred the account back to the estate of the decedent. Based on this error made by the bank, Young's name appeared on the savings account as the sole owner at the end of 2005, and for this reason, she mistakenly received a government request to pay taxes on the interest generated by the funds in the savings account. In the absence of any documentation that clearly establishes that the decedent intended to make Young a co-owner with a right of survivorship in the savings account, the bank's error in transferring the savings account to Young does not result in a finding that she is entitled to the savings account funds. Further, we find that had the decedent desired to make Young a co-owner with a right of survivorship in the savings account, she would have requested that the bank effectuate that intent, as it did when she made Young a co-owner of the checking account with a right of survivorship. The record clearly demonstrates that the decedent did not take any such action. Thus, we must assume that the decedent did not intend to make Young a co-owner in the savings account.

{¶ 19} Young's first assignment of error is overruled.

### III

{¶ 20} Young's second assignment of error is as follows:

{¶ 21} "The trial court allowed the estate to be unjustly enriched through services provided by Estella Young despite ruling that she was entitled to compensation under a quantum meruit theory."

{¶ 22} In her second assignment, Young contends that the trial court abused its discretion when it did not award her the entire amount of funds held in the savings account as compensation for services she provided the decedent under the theory of quantum meruit. Although the probate court found that Young was entitled to $40,000 in compensation for approximately ten years of service to the decedent, Young argues that the amount reached by the court was both arbitrary and unreasonable. Young asserts that the amount awarded to her by the court failed to take into account the evidence adduced at the hearing, which established that she had been providing services to the decedent and her husband since 1976.

■ {¶ 23} The doctrine of quantum meruit is an equitable remedy giving "rise to obligations imposed by law, irrespective of the intentions of the parties, in order to prevent an injustice when one party retains a benefit from another's labors." *Pawlus v. Bartrug* (1996), 109 Ohio App.3d 796, 673 N.E.2d 188.

{¶ 24} As we stated in *Motzer v. Estate of Carpenter* (May 18, 1990), Montgomery App. No. 11869, 1990 WL 68960:

■ {¶ 25} "An action in quantum meruit is brought upon an implied promise to pay the reasonable worth of services rendered or materials furnished by one person for another and which are knowingly and voluntarily accepted by the recipient. Upon proof of those facts, the law presumes that the services were given and received in the expectation of payment and implies a promise to pay what they are reasonably worth. 18 Ohio Jurisprudence 3d, Contracts, [(2008)], Section 314, 315.

■ {¶ 26} "An action in quantum meruit will lie for the value of goods and services furnished to and for the benefit of a decedent during his or her lifetime. *Corbin v. Bort* (1941), 35 N.E.2d 984. If such services are rendered under circumstances which require an implication that they are not gratuitous, and if the amount to be paid therefore is not fixed and the person for whom they are rendered indicates orally that he will leave a legacy to the other but fails to do so, payment for such services may be recovered in an action in quantum meruit. *Evans v. McInturff* (1960), 111 Ohio App. 445 [15 O.O.2d 62], 173 N.E.2d 162. In the absence of a family relationship, the presumption is that one who performs such services is to be paid therefor. *Id.* at 447 [15 O.O.2d 62], 173 N.E.2d 162."

{¶ 27} The record demonstrates that Young had no family relationship with the decedent. Rather, they were friends and neighbors. According to the testimony of Young, she provided services to and for the benefit of the decedent and her husband over a period of several years that began in 1976 when Young and her family moved next door to the decedent and her family. However, Young is unable to produce any receipts or other documentation that would affirmatively demonstrate that she provided care for the decedent and her husband from that point in time.

■ {¶ 28} Young testified that she helped the decedent because she loved and cared for her as one would a family member. While we agree with the probate court that Young certainly did provide services to the decedent, the record is unclear as to when Young began performing services with the expectation that she would receive payment. Although Young testified that the decedent promised her the whole of her estate upon her death, there is no written agreement suggesting that any such agreement was entered into.[1]

---

1. Additionally, Young's testimony with respect to what the deceased may or may not have told her constitutes hearsay testimony, which is inadmissible pursuant to Evid.R. 802. Moreover,

{¶ 29} Nevertheless, the probate court found that Young began providing more extensive care for the decedent and her husband around the time the decedent lost her driver's license due to a car accident in July 1999. We agree with the probate court and find that an implied contract existed that the decedent wished to compensate Young for her help. The record supports the court's conclusion that Young's duties consisted mainly of sporadic light housekeeping, running errands, and basically keeping the decedent company after her husband passed away. The record also establishes from the testimony of various witnesses that Young provided these services to the decedent for a period of time between approximately six years and 15 years. The probate court settled on a period of ten years, finding that Young should be compensated for her services to the decedent at $4,000 per year for a grand total of $40,000. After a thorough review of the record, we find that the probate court acted reasonably when it set both the time span and amount of compensation. "[A]lthough the trial court's 'decision' omitted reference to how it resolved the issue, 'when considered together with other parts of the trial court's record, it formed an adequate [basis] upon which to decide the narrow legal issue presented.'" *Kroeger v. Ryder* (1993), 86 Ohio App.3d 438, 443, 621 N.E.2d 534, quoting *Stone v. Davis* (1981), 66 Ohio St.2d 74, 85, 20 O.O.3d 64, 419 N.E.2d 1094. Thus, we conclude that the probate court acted properly when it found that Young was entitled to compensation for her services pursuant to the theory of quantum meruit. Moreover, we find that the court, based on the confusing and contradictory evidence before it, correctly set the amount Young was entitled to in light of the nature and duration of her services for the decedent. Young is not entitled to the whole of the remaining funds in the decedent's savings account.

{¶ 30} Young's second assignment of error is overruled.

## IV

{¶ 31} Young's third and final assignment of error is as follows:

{¶ 32} "The trial court improperly disregarded facts and circumstances which by law indicate that the money transferred to Estella Young, prior to Ms. Kirkland's passing was a gift."

---

such testimony would not have fit within the exception to the hearsay rule for statements of a deceased person under Evid.R. 804(B)(5), because that rule exists for the benefit of the decedent's representative to permit the decedent to essentially "speak from the grave" to rebut the testimony of an adverse party. *Bobko v. Sagen* (1989), 61 Ohio App.3d 397, 409, 572 N.E.2d 823. It does not exist for the benefit of a party, such as Young, who is opposing the decedent or his or her representative. See *Bilikam v. Bilikam* (1982), 2 Ohio App.3d 300, 305, 2 OBR 332, 441 N.E.2d 845.

{¶ 33} In her third and final assignment, Young contends that the money transferred to her prior to the passing of the decedent should not be returned to the estate because it was a gift from the decedent. Young argues that the language of the general power of attorney granted to her by the decedent gave her the right to transfer funds from the savings account as a gift to herself.

{¶ 34} Ohio law requires that the recipient of an inter vivos gift prove by clear and convincing evidence that a gift was made. *In re Fife's Estate* (1956), 164 Ohio St. 449, 456, 58 O.O. 293, 132 N.E.2d 185. Thus, the onus was on Young to establish that the funds she withdrew prior to the passing of the decedent were a gift. After a thorough review of the record in the instant matter, we conclude that Young has failed to meet that burden.

{¶ 35} A power of attorney is a written instrument authorizing an agent, known as an "attorney-in-fact," to perform specific acts on the principal's behalf. *Testa v. Roberts* (1988), 44 Ohio App.3d 161, 164, 542 N.E.2d 654. "[A] general, durable power of attorney does not authorize attorneys-in-fact to transfer the principal's property to themselves or to others, unless the power of attorney explicitly confers this power. An attorney-in-fact may not make gratuitous transfers of the principal's assets unless the power of attorney from which the authority is derived expressly and unambiguously grants the authority to do so." *MacEwen v. Jordan* (Mar. 28, 2003), Hamilton App. No. C–020431, 2003-Ohio-1547, 2003 WL 1571741.

{¶ 36} Contrary to what Young asserts, the general power of attorney granted by the decedent to Young did not give her the right to transfer funds from the savings account to herself as a gift. The power of attorney authorized Young to transact business for the decedent. Simply because the language of the power of attorney did not specifically deny Young the right to transfer funds from the savings account to herself as gifts, she cannot assume the right exists from the absence of such restrictive language.

{¶ 37} Lastly, Young's assertion that the decedent was aware of, and therefore ratified her numerous withdrawals from the savings account, is without basis in law or fact. As appellee correctly points out, Young did not begin to withdraw funds from the savings account until after the decedent had been placed in a nursing home. The bank statements were sent to the decedent's home, not to the nursing home. Other than Young's statements to the contrary, no evidence was presented that the decedent was aware that Young was withdrawing funds from the savings account and using those funds for her own purposes. We agree with the trial court and conclude that Young was engaging in self-dealing when she withdrew the funds from the savings account. The fact that Young was engaging in self-dealing is most evident by her withdrawal of $10,000

from the savings account the day after the decedent passed away. Although she averred that the money was to be used for the decedent's funeral expenses in her answer to the estate's complaint, Young's credibility was undermined when she was confronted with the fact at trial that the deceased's funeral expenses had already been paid by the decedent's estate.

{¶ 38} After a thorough review of the record, we hold that the funds transferred by Young to herself from the savings account were not a gift from the decedent. Young was clearly engaged in self-dealing when she chose to "gift" herself the sums from the savings account. The funds removed prior to and after the passing of the decedent were improperly removed by Young, and the probate court did not err when it held that the funds in question should be returned to the estate of the deceased. Young has failed to establish by clear and convincing evidence that the decedent intended to gift her the funds withdrawn from the savings account.

{¶ 39} Young's third and final assignment of error is overruled.

## V

{¶ 40} All of Young's assignments of error having been overruled, the judgment of the probate court is affirmed.

Judgment affirmed.

WOLFF, P.J., and GRADY, J., concur.