[Cite as *J. Bowers Constr. Co., Inc. v. Gilbert*, 2014-Ohio-3576.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

J. BOWERS CONSTRUCTION CO., INC.

    Appellee

    v.

EDWARD L. GILBERT, et al.

    Appellants

C.A. No.      27044

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CV 2011 08 4841

DECISION AND JOURNAL ENTRY

Dated: August 20, 2014

WHITMORE, Judge.

{¶1} Defendant-Appellants, Edward and Delphenia Gilbert (collectively, "the Gilberts"), appeal from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I

{¶2} In August 2009, the Gilberts received a call from their home security company notifying them that an alarm had been activated. When the Gilberts arrived home, the police and fire department were already on scene. The Gilberts discovered their home was flooded from a burst water pipe in an upstairs room. Someone from the fire department recommended J. Bowers Construction Company, Inc. ("Bowers") to do emergency repairs.

{¶3} Bowers was contacted and sent an agent to the Gilberts' that same day. Edward Gilbert signed an authorization form for the emergency repairs and Bowers began work immediately. The Gilberts had a home insurance policy with Travelers Insurance, and Travelers

provided a written estimate for the repairs. At some point, it was determined that Bowers would also do the necessary repairs to the home after the emergency repairs were completed. However, the Gilberts did not sign any additional documentation.

{¶4} Over the next year-and-a-half, Bowers worked with the Gilberts and Travelers to complete the repairs. During this process, the Gilberts chose not to repair certain things that were covered by their insurance policy and to upgrade things that were not covered. While the repairs were being made, Travelers issued partial payments to the Gilberts, and the Gilberts made $65,000 in payments to Bowers. In February 2011, Travelers issued a final estimate totaling $132,451.98. Bowers and Edward Gilbert met on March 2, 2011, and reviewed various credits and charges for upgrades. Gilbert tendered a check for $6,624.89, and, it appears, both parties believed the remaining balance of $67,451.98 would be paid by Travelers.

{¶5} In August 2011, having received no additional payments, Bowers filed a claim for breach of contract and quantum meruit. The Gilberts counterclaimed alleging fraud, damage to the property by the construction workers, and the use of substandard materials. After a bench trial, the court entered a judgment in favor of Bowers for $67,451.98. The Gilberts now appeal and raise seven assignments of error for our review.

II

Assignment of Error Number One

THE TRIAL COURT ERRED WHEN IT RULED THAT J. BOWERS WAS ENTITLED TO JUDGMENT BASED ON QUANTUM MERUIT WHEN IT ALREADY DETERMINED THAT THERE WAS AN EXPRESS CONTRACT.

{¶6} In their first assignment of error, the Gilberts argue that the court erred by awarding judgment in favor of Bowers under the theory of quantum meruit because the court found that there was an express contract between the parties.

{¶7} The Gilberts' first assignment of error raises a question of law, which this Court reviews de novo. *See Fuline v. Green*, 9th Dist. Summit No. 26586, 2013-Ohio-2171, ¶ 6. In conducting a de novo review, an appellate court does not give deference to the trial court's determination. *Akron v. Frazier*, 142 Ohio App.3d 718, 721 (9th Dist.2001).

{¶8} "A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976). There is no valid contract where the parties have not had a meeting of the minds as to the essential terms. *See Minster Farmers Coop. Exchange Co., Inc. v. Meyer*, 117 Ohio St.3d 459, 2008-Ohio-1259, ¶ 28.

{¶9} In the absence of a valid contract, a party may still recover under a quasi-contract theory. "Recovery in quasi-contract prevents the defendant from unjustly enriching himself at the expense of the plaintiff." *Bokar v. Lax*, 9th Dist. Medina No. 2630-M, 1997 WL 557333, *2 (Sept. 3, 1997), citing *Hughes v. Oberholtzer*, 162 Ohio St.3d 330, 335 (1954). An example of a quasi-contract claim is quantum meruit. *See Hammontree & Associates, Ltd. v. Stephens*, 9th Dist. Wayne No. 2222, 1987 WL 15106, *2 (July 29, 1987).

{¶10} Quantum meruit is an equitable remedy giving "rise to obligations imposed by law, irrespective of the intentions of the parties, in order to prevent an injustice when one party retains a benefit from another's labors." (Internal quotations and citations omitted.) *In re Suchodolski*, 9th Dist. Lorain No. 10CA009833, 2011-Ohio-6333, ¶ 8, quoting *In re Estate of Kirkland*, 175 Ohio App.3d 73, 2008-Ohio-421, ¶ 23 (2d Dist.). "*Quantum meruit* is generally

awarded when one party confers some benefit upon another without receiving just compensation for the reasonable value of services rendered." (Emphasis sic.) *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 55 (1989). To prevail on a claim of quantum meruit, a plaintiff is required to show "(1) a benefit has been conferred by [the] plaintiff upon [the] defendant; (2) the defendant had knowledge of the benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment." *In re Suchodolski* at ¶ 8, quoting *Bldg. Industry Consultants, Inc. v. 3M Parkway, Inc.*, 182 Ohio App.3d 39, 2009-Ohio-1910, ¶ 16 (9th Dist.).

{¶11} Because a quasi-contract claim only exists when there is no valid contract, "a party cannot claim that both an express contract and a quasi-contract exist over the same subject matter." (Emphasis omitted.) *Champion Contracting Const. Co., Inc. v. Valley City Post No. 5563*, 9th Dist. Medina No. 03CA0092-M, 2004-Ohio-3406, ¶ 25. "While it is true that a party may not recover for the same services under both a contractual claim and a claim for quantum meruit, a party is not barred from seeking alternative theories and recovering under a quantum meruit theory if his contractual claim fails." *Bldg. Industry Consultants, Inc.* at ¶ 17.

{¶12} On September 12, 2009, the Gilberts received a call from their security company that an alarm had been activated at their home. When the Gilberts arrived at their house, the police and fire department were already there. The Gilberts opened the door and discovered that their house was flooded from a burst water pipe. According to Edward Gilbert's testimony, someone from the fire department recommended Bowers to come out and perform emergency repairs. There is some dispute about who actually contacted Bowers. In any event, it is undisputed that a representative of Bowers went to the Gilberts' home that same day, and

Edward Gilbert signed a document entitled "Access & Authorization for Emergency & Temporary Repairs." This authorization form provided:

> I hereby give access and authorization to J. Bowers Construction Inc. for the purpose of making necessary temporary emergency repairs to the above address as a result of 9-12-09, date of loss 9-12-09. It is my understanding that the services performed by J. Bowers Construction Inc. will be limited to those which are authorized by owner/agent or by my/our insurance company, unless other arrangements for payment are agreed upon in writing in advance. All charges will be based on time and material. All labor costs are charged portal to portal.

{¶13} Stephen Hayes, Bowers' project manager, testified that this authorization form "g[a]ve [Bowers] permission to come into the home to do – dry-out mitigation." Hayes explained that the emergency services performed at the Gilberts' home involved "[w]ater extraction, demolition, [and] dry-out." Hayes further testified that these "emergency services" did not involve the repairs to the home. According to Hayes, the emergency work, totaling approximately $9,000, was completed and paid for.

{¶14} Hayes testified that after the emergency repairs were complete, a request was made for Bowers to perform repairs to the home. However, no contract for repairs was ever drafted, and the Gilberts never signed any additional documentation. Over the next couple of years, Hayes managed the repairs to the Gilberts' home. In doing so, Hayes worked closely with the Gilberts and the Gilberts' insurance company, Travelers. Throughout the project Travelers provided numerous estimates, at least some of which were shared with the Gilberts. The Gilberts made decisions not to repair certain things that were covered under their insurance policy and also to perform certain upgrades that were not covered.

{¶15} The trial court found that "Mr. Gilbert entered into a contract with Bowers to perform remedial work on the Gilbert home; that the contract was orally modified to include upgrades to the kitchen countertops and the carpeting[.]" A review of the record supports the

finding that Edward Gilbert entered into contract for "necessary temporary emergency repairs." However, the record does not support a finding that a contract existed for the subsequent repairs of the home. Hayes himself testified that the emergency services were separate and apart from the repairs to the home.

{¶16} While we conclude that the trial court erred in finding a valid contract for non-emergency repairs existed, we also conclude that this error is not reversible under the facts of this case. If an error is not prejudicial, an appellate court shall affirm the judgment of the trial court. *See Cook Family Invests. v. Billings*, 9th Dist. Lorain Nos. 05CA008689 & 05CA008691, 2006-Ohio-764, ¶ 19.

{¶17} The court ultimately found that "the Gilberts accepted the work performed and materials provided and [that] Bowers [wa]s entitled to a judgment based on quantum meruit." After a careful review of the record, we agree. The record shows that Edward Gilbert was very involved in selecting which repairs to make to the home. Further, Gilbert was corresponding with Travelers and Hayes throughout the project about the insurance estimates and what was and was not covered. Because we conclude that the court correctly determined that Bowers was entitled to a judgment against the Gilberts based on a theory of quantum merit, the court's erroneous finding of a repair contract is not prejudicial.

{¶18} The Gilberts' first assignment of error is overruled.

### Assignment of Error Number Two

THE TRIAL COURT ERRED WHEN IT RULED THAT J. BOWERS WAS ENTITLED TO A JUDGMENT BASED ON QUANTUM MERUIT, ALTHOUGH J. BOWERS DID NOT PROVIDE SUFFICIENT EVIDENCE OF THE VALUE OF THE SERVICES RENDERED.

**{¶19}** In their second assignment of error, the Gilberts argue that Bowers failed to provide sufficient evidence of the "reasonable value of the materials and services rendered." We disagree.

**{¶20}** "In civil cases, as in criminal cases, the sufficiency of the evidence is quantitatively and qualitatively different from the weight of the evidence." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, paragraph two of the syllabus. "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine * * * whether evidence is legally sufficient to support [a finding] as a matter of law." (Alterations sic.) *Raykov v. Raykov*, 9th Dist. Summit No. 26107, 2012-Ohio-2611, ¶ 8, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency challenges the burden of production and is a test of adequacy. *Eastley* at ¶ 11, quoting *Thompkins* at 386.

**{¶21}** "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Id.* This Court reviews questions of law de novo. *See Gugliotta v. Morano*, 161 Ohio App.3d 152, 2005-Ohio-2570, ¶ 56 (9th Dist.). In conducting a de novo review, this Court gives no deference to the trial court's legal conclusions. *Lanning v. Stanford-Black*, 9th Dist. Lorain No. 09CA009561, 2009-Ohio-6022, ¶ 8. However, this Court will not reverse a trial court's factual finding if it is supported by competent, credible evidence. *Maxwell v. Maxwell*, 9th Dist. Wayne No. 07CA0047, 2008-Ohio-1324, ¶ 6.

**{¶22}** "The standard for review of the sufficiency of the evidence in a civil case is similar to the standard for determining whether to sustain a motion for judgment notwithstanding the verdict, which is whether the defendant is entitled to judgment as a matter of law when the evidence is construed most strongly in favor of the prevailing party." *Warden v. Ohio Dept. of Natural Resources*, 10th Dist. Franklin No. 13AP-137, 2014-Ohio-35, ¶ 46, quoting *In re J.B.*,

10th Dist. Franklin Nos. 08AP-1108, 09AP-39, 08AP-1109 & 08AP-1122, 2009-Ohio-3083, ¶ 20.

**{¶23}** "To prove its claim [of quantum meruit], Bowers had to show that it conferred a benefit on the [Gilberts], that they had knowledge of the benefit, and that they retained the benefit under circumstances in which it would be unjust for them to do so without payment." *Bowers Constr. Co., Inc. v. Chuparkoff*, 9th Dist. Summit No. 24775, 2010-Ohio-419, ¶ 10. Bowers also had to prove the reasonable value of the benefit conferred. *Id.*, citing *Stoebermann v. Beacon Journal Publishing Co.*, 177 Ohio App.3d 360, 2008-Ohio-3769, ¶ 29 (9th Dist.).

**{¶24}** The Gilberts argue that Bowers failed to provide sufficient evidence of the reasonable value of the materials and services rendered. Therefore, we limit our review accordingly.

**{¶25}** Stephen Hayes is an estimator with Bowers and served as the project manager for the repairs to the Gilberts' home. According to Hayes, Bowers specializes in insurance work. Hayes testified that he has thirteen years of experience in writing estimates and currently writes between 100 to 150 estimates a year. Hayes explained that if an insurance company is involved in a case from the beginning, the insurance company will typically write the estimate.

**{¶26}** Hayes testified that Bowers uses "Xactimate" when writing estimates. Hayes stated that Xactimate is a software program that calculates the average cost of a repair based on the county and the square footage. Hayes explained, "[i]f a wall needs to be torn out, you put in that square footage of the wall and it calculates the pricing." Hayes testified that the pricing used by Xactimate is "somewhere in the middle of the pricing of the area" and is "basically an industry standard." Hayes further testified that most insurance companies write estimates in Xactimate, but even those that do not "at least recognize what it is."

**{¶27}** According to Hayes, an estimate is often modified throughout the project. For example, it is common to have a situation where a homeowner does not want to make certain repairs that are covered by the insurance policy and, at the same time, wants to make certain upgrades that are not covered. In those circumstances, Hayes explained, "we'll take what is in the estimate and we'll move things around to accommodate everybody." In doing so, the homeowner receives a credit for the work that is not done, which is then applied toward the cost of any upgrade.

**{¶28}** Hayes testified that the Gilberts had an insurance policy through Travelers and that Travelers wrote the estimate for the repairs to the Gilberts' home. Hayes further testified that Travelers uses Xactimate in writing estimates. Travelers, working with the Gilberts and Hayes, revised its estimate numerous times throughout the year-and-a-half project. In February 2011, the final estimate from Travelers was forty pages long and totaled $132,451.98. Hayes testified that he went "through the estimate line by line by line" with Gilbert. As a result, Hayes produced a typed, itemized list of credits, detailing the corresponding page and line number in the estimate for which the credit was given. Additionally, the page contained a list of the various charges for upgrades.

**{¶29}** On March 2, 2011, Hayes and Gilbert met to review the itemized list of credits and upgrade charges. According to Hayes, he agreed to two additional credits, handwrote them on the sheet, and calculated the balance due. Hayes wrote on the sheet that the insurance company owed $67,451.98, leaving a balance of $6,624.89. Gilbert immediately tendered a check for $6,624.89 and signed the itemized list of credits and charges. Hayes testified that because he had only received $65,000 from the Gilberts, he believed Travelers still owed $67,451.98 to bring the total disbursement amount to the final estimate of $132,451.98.

{¶30} After a review of the record, we conclude Bowers provided sufficient evidence of the reasonable cost of materials and services rendered. Bowers used Travelers' written estimate created through Xactimate. Hayes testified that the Xactimate software produces a mid-range cost of repairs based on the county and square footage. Moreover, Hayes testified that Gilbert agreed to the credits and upgrade charges on the itemized sheet when he signed the sheet and tendered a check for the out-of-pocket expenses.

{¶31} The Gilberts' second assignment of error is overruled.

<u>Assignment of Error Number Three</u>

THE TRIAL COURT ERRED WHEN IT RULED THAT J. BOWERS WAS ENTITLED TO A JUDGMENT BASED ON QUANTUM MERUIT AGAINST EDWARD GILBERT BECAUSE HE IS NOT THE OWNER OF THE RESIDENCE.

{¶32} In the third assignment of error, Edward Gilbert argues that the court erred in entering a judgment against him because Bowers "did not prove that it conferred a benefit upon Edward Gilbert because he is not the owner of the property." We disagree.

{¶33} To prevail on a claim of quantum meruit, a plaintiff is required to show "(1) a benefit has been conferred by [the] plaintiff upon [the] defendant; (2) the defendant had knowledge of the benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment." *In re Suchodolski*, 2011-Ohio-6333, at ¶ 8, quoting *Bldg. Industry Consultants, Inc.*, 182 Ohio App.3d 39, 2009-Ohio-1910, at ¶ 16. Quantum meruit is intended to prevent "the defendant from unjustly enriching himself at the expense of the plaintiff." *Bokar*, 1997 WL 557333, at *2.

{¶34} Knowing he was not the legal owner of the property, Gilbert signed the emergency repair authorization. Additionally, he continued to work with Travelers and Hayes for almost two years to repair the property and settle the related bills. Gilbert never informed

anyone involved that he did not legally own the property. While the property at issue is titled solely in his wife's name, there is no dispute that Edward Gilbert lives in the home with his wife. Gilbert's argument that he received no benefit from the repair of his primary residence simply because he is not the person named on the deed is without merit.

**{¶35}** The Gilberts' third assignment of error is overruled.

Assignment of Error Number Four

THE TRIAL COURT ERRED WHEN IT FOUND THAT THERE WAS A BINDING CONTRACT BETWEEN J. BOWERS AND EDWARD GILBERT, ALTHOUGH J. BOWERS FAILED TO PROVIDE THE REQUIRED THREE-DAY CANCELLATION NOTICE.

**{¶36}** In their fourth assignment of error, the Gilberts argue that the trial court erred in enforcing the contract between the Gilberts and Bowers because the contract failed to provide the statutorily required three-day cancellation notice.

**{¶37}** "A failure to provide a cancellation notice in a transaction covered by [The Home Solicitation Act] constitutes a violation of the [Consumer Sales Practices Act] under R.C. 1345.02." *Garber v. STS Concrete Co., L.L.C.*, 8th Dist. Cuyahoga No. 99139, 2013-Ohio-2700, ¶ 19. Where there is a violation of R.C. 1345.02, "the consumer may, in an individual action, rescind the transaction or recover the consumer's actual damages * * *." R.C. 1345.09(A). "The Home Solicitation Act is designed to provide a consumer with a weapon against high pressure sales tactics occurring in the home." *Carpet One Mentor, Inc. v. Bridge*, 11th Dist. Lake No. 2006-L-005, 2007-Ohio-3028, ¶ 62.

**{¶38}** In their counterclaim, the Gilberts requested damages based on fraud, damage done to the property by the construction workers, and the use of substandard materials. The Gilberts did not allege a violation of the Home Solicitation Act based on Bowers' failure to

provide a three-day cancellation notice. Because the Gilberts did not properly plead this statutory violation, the court did not err in failing to award damages.

{¶39} To the extent that the Gilberts argue that the court erred in enforcing the contract because Bowers did not provide the three-day cancellation notice, we find this argument moot because the judgment is affirmed base on quantum meruit, not on the enforcement of a contract.

{¶40} The Gilberts' fourth assignment of error is overruled.

<u>Assignment of Error Number Five</u>

THE TRIAL COURT ERRED WHEN IT FAILED TO RULE THAT EDWARD GILBERT COULD RESCIND THE CONTRACT.

{¶41} In their fifth assignment of error, the Gilberts argue that the court erred in finding that they were not able to rescind the contract with Bowers.

{¶42} Where there is a violation of the Consumer Sales Practices Act, "the consumer may, in an individual action, rescind the transaction or recover the consumer's actual damages * * *." R.C. 1345.09(A). However, "in any action for rescission, revocation of the consumer transaction must occur within a reasonable time * * * and before any substantial change in condition of the subject of the consumer transaction." R.C. 1345.09(C).

{¶43} The Gilberts argue that the court erred in not permitting them to rescind their contract with Bowers. However, as discussed above, the Gilberts did not have a contract with Bowers to repair the home. Therefore, there was no contract to rescind. Moreover, there is no evidence in the record that the Gilberts ever sought to rescind the contract in the trial court. In their counterclaim, the Gilberts requested damages based on fraud, damage done to the property by the construction workers, and the use of substandard materials.

{¶44} Assuming arguendo that the Gilberts had requested to rescind the transaction, the statute requires that the buyer seek rescission prior to a "substantial change in condition." *See*

R.C. 1345.09(C). *Accord Garber*, 2013-Ohio-2700, at ¶ 20, quoting *Reichert v. Ingersoll*, 18 Ohio St.3d 220, 224 (1985) ("rescission is not an appropriate remedy under the [Consumer Sales Practices Act] where 'there has been a substantial change in the subject of the consumer transaction.'"). Here, Bowers had completed extensive repairs to the Gilberts' home. Even if the Gilberts had sought to rescind the transaction, we conclude that rescission would not be appropriate because a substantial change in condition had already occurred. *See* R.C. 1345.09(C).

{¶45} The Gilberts' fifth assignment of error is overruled.

## Assignment of Error Number Six

THE TRIAL COURT ERRED WHEN IT FOUND THAT THERE WAS A BINDING CONTRACT, ALTHOUGH THE ALLEGED CONTRACT VIOLATED THE STATUTE OF FRAUDS.

{¶46} In their sixth assignment of error, the Gilberts argue that the court erred in enforcing a contract that did not satisfy the statute of frauds.

{¶47} Because we have already concluded that there was no valid contract and that Bowers was entitled to judgment based on quantum meruit, this assignment of error is moot and we decline to address it. *See* App.R. 12(A)(1)(c).

## Assignment of Error Number Seven

THE TRIAL COURT ERRED WHEN IT RULED THAT TRAVELERS INSURANCE WAS NOT AN INDISPENSABLE PARTY.

{¶48} In their seventh assignment of error, the Gilberts argue that the court erred in finding that Travelers Insurance was not a necessary and indispensable party. We disagree.

A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (a) as a practical matter impair or impede his ability to protect that interest or (b) leave any of the

persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest, or (3) he has an interest relating to the subject of the action as an assignor, assignee, subrogor, or subrogee. If he has not been so joined, the court shall order that he be made a party upon timely assertion of the defense of failure to join a party as provided in Rule 12(B)(7).

Civ.R. 19(A). An indispensable party has been defined as:

one whose absence seriously prejudices any party to the action or prevents the court from rendering any effective judgment between the parties, or is one whose interests would be adversely affected or jeopardized by the judgment rendered between the parties to the action. Mere avoidance of multiple litigation is not a sufficient basis to render one an indispensable party.

*Englehart v. C.T. Taylor C., Inc.*, 9th Dist. Summit No. 19325, 1999 WL 1215110, *2, quoting

*Layne v. Huffman*, 43 Ohio App.2d 53, 59 (10th Dist.1974).

**{¶49}** The Gilberts argue that "Bowers mainly dealt with Travelers Insurance with regard to the goods purchased and services provided; therefore, it is a necessary and indispensable party." We disagree.

**{¶50}** Bowers brought suit against the Gilberts to recover the costs associated with the repairs it performed in the Gilberts' home. Bowers had contact with Travelers Insurance to discuss what repairs were necessary, determine what repairs were covered under the Gilberts' policy, and to ensure the repair costs remained within the insurance estimate that had been written by Travelers. There is no evidence, however, of a contract between Bowers and Travelers. The record shows that Bowers also worked closely with Edward Gilbert over the course of the repairs. Gilbert received copies of at least some of the insurance estimates and declined certain repairs that had been authorized by Travelers, opting instead to receive a credit toward chosen upgrades.

**{¶51}** At trial, Edward Gilbert testified that he had received money from Travelers for the repairs to the home, but that he had concerns about whether the proper amount for the

building repair had been disbursed. Specifically, Gilbert averred that "the first adjuster [at Travelers] included everything into the checks, contents, depreciation, building and so forth. That was the confusion, and, quite frankly, still is the confusion, because there's some question as to what was allocated for what." Even assuming Travelers has not distributed the full amount owed to the Gilberts under their insurance policy, this does not make Travelers an indispensable party to this action. *See Englehart*, 1999 WL 1215110, at *2. ("Mere avoidance of multiple litigation is not a sufficient basis to render one an indispensable party."). The Gilberts are free to pursue a claim against Travelers if they feel their policy was breached by Travelers.

{¶52} We cannot conclude that the absence of Travelers as a party "seriously prejudice[d] any party to the action or prevent[ed] the court from rendering [an] effective judgment between the parties." *See id.* Nor is there any evidence that Travelers' interests would be adversely affected by a judgment between the parties.

{¶53} The Gilberts' seventh assignment of error is overruled.

III

{¶54} The Gilberts' sixth assignment of error is moot. Their remaining assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

_____
BETH WHITMORE
FOR THE COURT

HENSAL, J.
CONCURS.

BELFANCE, P. J.
DISSENTING.

{¶55} I respectfully dissent. The trial court in this case misapplied the law in its judgment, and, therefore, the matter must be remanded so that the trial court may apply the law correctly in the first instance and enter judgment.

{¶56} The record reflects that the Gilberts suffered water damage at their home and that they signed an agreement for J. Bowers Construction to perform the initial remediation work to forestall any more damage by virtue of the water coming into the home. As this took place, the Gilberts' insurance company examined the damage and began the process of determining the appropriate coverage for the damage. With the assistance of the insurance adjuster, the insurance company used a computer program to create a document, which itemized the estimated cost of repairs and reflected the sum the insurance company would pay the Gilberts for the water

damage to the structure. Upon completing the water remediation work, J. Bowers Construction proceeded to render services to the Gilberts; however, the company did not present the Gilberts with a contract delineating the scope of the work to be performed or its cost. In particular, at the outset, J. Bowers Construction did not enter into an agreement with the Gilberts providing that the Gilberts would pay the amount ultimately authorized by the insurance company. Instead, it began to render services without entering into a written contract.

{¶57} After the work was completed, Mr. Hayes met with Mr. Gilbert as the representative of J. Bowers Construction to discuss the final cost of the work. Mr. Hayes explained that the insurance estimate had been for $132,451.98 but that the Gilberts had requested upgrades beyond those provided for in the estimate, increasing the cost of the project by $8,024.89. Mr. Hayes further explained that, since the insurance company had already paid $65,000 for the work, it would only cover $67,451.98 of the outstanding balance, making the Gilberts responsible for $6,624.89, which was the additional value of the work less credits for damage to the home caused by employees of J. Bowers Construction and allegedly subpar carpet used. Mr. Gilbert signed the document presented by Mr. Hayes containing all these numbers and wrote a check for $6,624.89. Mr. Gilbert subsequently signed a form indicating that he was satisfied with the work performed by J. Bowers Construction so that the insurance company would release the final disbursement.

{¶58} However, prior to giving J. Bowers Construction any of the insurance distribution, the Gilberts requested to see the material and labor costs so that they could determine the actual value of the services performed by J. Bowers Construction. J. Bowers Construction refused to provide the information, stating that such information was proprietary, and brought suit against the Gilberts, demanding payment based upon the values itemized by the insurance company in

its estimate. It appears that J. Bowers Construction believes that, at some point along the way, it entered into an express contract with the Gilberts. The Gilberts deny that an express contract existed and instead suggest that J. Bowers Construction was required to settle up with the Gilberts through reviewing the labor and material costs actually expended by J. Bowers Construction.

{¶59} It is evident from the record that J. Bowers Construction performed services such that payment is required. However, a critical threshold question for the trial court was whether there existed an express contract between J. Bowers Construction and the Gilberts. In this regard, the evidence reveals that there was an initial written document authorizing the initial water remediation, and no other writings evidencing an agreement to pay J. Bowers Construction a specific sum of money when it undertook the actual repair of the home. However, the trial court found that a contract did exist. Notwithstanding this finding, it proceeded to award damages based upon the remedy of quantum meruit.[1] This was improper because quantum meruit is an equitable remedy which is based upon the law implying an obligation and is founded upon the *absence* of an express contract. *See Zeck v. Sokol*, 9th Dist. Medina No. 07CA0030-M, 2008-Ohio-727, ¶ 13 (noting that equitable recovery is inapplicable if an express agreement exists concerning the services at issue); *see also In re Estate of Kirkland,* 175 Ohio App.3d 73, 2008-Ohio-421, ¶ 25 (2d Dist.), quoting *Motzer v. Estate of Carpenter,* 2d Dist. Montgomery No. 11869, 1990 WL 68690, *2 (May 18, 1990), citing 18 Ohio Jurisprudence 3d, Contracts, Section 314, 315 ("'An action in quantum meruit is brought upon an implied promise to pay the reasonable worth of services rendered or materials furnished by one person for another and

---

[1] In addition, given its determination that a contract existed, the trial court did not address all of the contractual issues raised by the Gilberts (e.g., whether they could rescind the contract pursuant to R.C. 1345.22).

which are knowingly and voluntarily accepted by the recipient. Upon proof of those facts, the law presumes that the services were given and received in the expectation of payment and implies a promise to pay what they are reasonably worth.'"). Thus, the remedies available under quantum meruit are substantively different than those under an express contract, which are limited to the damages caused by the breach. *See Schottenstein Zox & Dunn Co., L.P.A. v. Reineke*, 9th Dist. Medina No. 10CA0138-M, 2011-Ohio-6201, ¶ 12. Therefore, if an express contract existed and was enforceable, the trial court was required to determine the damages caused by the breach. Thus, I would reverse and remand the matter for the trial court to further clarify its entry. To the extent that the trial court determined that an express contract existed, it should clarify this finding and proceed to award contract damages. If such was not the intent of the trial court, it should proceed to evaluate damages under quantum meruit.

{¶60} In this regard, the record reflects that, because J. Bowers Construction believed it had an express contract with the Gilberts, its focus was not upon demonstrating the reasonable value of the services it actually rendered to the Gilberts for purposes of demonstrating recovery under quantum meruit. Mr. Hayes testified that the values set forth in the insurance estimate were merely the average expected cost for the work.[2] However, the insurance company's estimate represents what it proposed to pay the Gilberts based upon the contract of insurance it had with them rather than the value of the work specifically performed by J. Bowers Construction. Thus, the Gilberts' agreement with their insurer to accept the payout proposed by the insurance company as reflected in its itemized estimate did not in any way bind them to pay those same sums to J. Bowers Construction and was not dispositive of the damage award under

---

[2] For example, J. Bowers Construction could have used inferior materials than those in the insurance estimates, had subpar skill or had lower actual labor costs in installing the materials, any of which could affect the determination of the reasonable value of the services it rendered.

quantum meruit.[3] However, although unclear, J. Bowers Construction may have convinced the trial court to award it the theoretical value for its work rather than the reasonable value of the services it actually rendered because the trial court simply awarded the value of the insurance estimate.

{¶61} The majority has determined that the trial court's error in finding that J. Bowers Construction had a contract with the Gilberts was harmless. However, in light of the trial court's erroneous analysis, which was based upon the intermingling of distinctly different legal theories of recovery, the trial court's decision should be reversed, and the matter should be remanded so that the trial court may clarify and determine in the first instance the existence of any enforceable contract. If there is a contract, the trial court should then determine the *contractual* damages, not the reasonable value of the work. However, to the extent there is no enforceable contract, the trial court should then consider whether J. Bowers Construction was entitled to recover under quantum meruit upon consideration of appropriate evidence demonstrating the reasonable value of the services J. Bowers Construction rendered.

{¶62} Accordingly, I dissent.

APPEARANCES:

EDWARD L. GILBERT, Attorney at Law, for Appellants.

THOMAS C. LOEPP, Attorney at Law, for Appellee.

---

[3] Of course, J. Bowers Construction and the Gilberts could have formed an express contract that, in exchange for completing the work delineated in the insurance estimate, J. Bowers Construction would receive all of the insurance distributions for the repairs delineated in the insurance estimate.