SLODOV, Appellant,

v.

**ANIMAL PROTECTIVE LEAGUE, Appellee.**

[Cite as *Slodov v. Animal Protective League* (1993), 90 Ohio App.3d 173.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 63561.

Decided Sept. 7, 1993.

*Michael D. Slodov,* for appellant.

*Jeffrey L. Kocian,* for appellee.

---

NAHRA, Presiding Judge.

Appellant, Hannah Slodov, appeals from the judgment of the Cleveland Municipal Court which rejected her claim for veterinary costs in the treatment of the dog she adopted from appellee, the Animal Protective League ("APL"). For the reasons set forth below, we affirm.

## I

On March 18, 1991, appellant adopted a four-month-old puppy from the APL for a fee of $45. Appellant signed an adoption agreement which stipulated that the APL would treat the dog at no cost to appellant for two weeks after the adoption. According to the agreement, the APL would not be held responsible for any treatment of the dog outside the APL clinic.

One day after the adoption, the dog became ill and was taken to an independent veterinarian for medical services.

On March 31, 1991, two weeks after the adoption, the dog became ill again. Appellant contacted the APL, which informed her that it would treat the dog according to the agreement if she could bring it the next day to its clinic. Appellant instead took the dog to an independent veterinarian. She then requested that the APL pay the veterinary bills, including advertising costs of placing the dog for adoption, because her landlord would not allow dogs in the apartment. The APL refused.

## II

Appellant assigns the following errors:

"I. An agreement involving the transfer of a dog nominally entitled 'Adoption Agreement' as a matter of law cannot constitute an adoption.

"II.   The transfer of possession of a dog for a price between the Animal Protective League and a buyer pursuant to a written agreement constitutes a sale of goods governed by the Uniform Commercial Code.

"A.   A writing governing the total legal obligations which result from the parties' agreement constitutes a contract.

"B.   A dog is considered a 'good' as defined by R.C. § 1302.01(8) (UCC § 2–105(1)).

"C.   A sale occurs when there is the passing of title from the seller to the buyer for a price.

"D.   Provisions in a contract for the sale of goods which implicitly purport to reserve an interest in such goods to the seller are limited in effect to the reservation of a security interest, and do not impede the passing of title from the buyer to the seller at the time such goods are delivered.

"E.   Assuming arguendo that the transfer of possession of a dog did not result in a contract for the sale of goods, absent the intended return of such an animal, it could not have resulted in a bailment agreement.

"III.   A contract for the sale of goods involving a dog gives rise to the implied warranties of merchantability and fitness for a particular purpose.

"IV.   A contract for the sale of goods involving a dog governed by the Uniform Commercial Code gives the buyer an opportunity to raise the issue of unconscionability.

"V.   Assuming arguendo that the transaction at issue did not constitute a contract for the sale of goods, a party to a contract is permitted to raise the issue of unconscionability of the contract under the restatement of contracts."

█   Appellant argues in her first assignment of error that the agreement between the APL and herself cannot constitute an adoption because adoption is for humans and not for animals.  This argument has no merit.  Webster's Ninth New Collegiate Dictionary (1983) 58 defines "adopt" as "to take by choice into a relationship."  So, by plain definition, adoption can be applied to animals.  In the instant case, the agreement did not cease to be an adoption because the legislature did not legislate it.

The agreement of the parties signed by appellant states as follows:

"I hereby acknowledge receipt from Animal Protective League (APL) of the animal described on the reverse side for adoption, and in accepting this animal agree to be bound by the following rules and conditions:

"  *  *  *

"3. *APL is released from any responsibility for any defects which the animal may have or may develop* and for any injury or damage to person or property which may be caused by it. The adopter hereby agrees to indemnify and hold harmless APL against all claims asserted by others for any injury or damages to person or property caused by the animal. [Emphasis added.]

" * * *

"5. APL makes no representation whatsoever relating to the health habits or any other fact about the animal.

"6. The APL will treat the animal at no cost to the adopter for 2 weeks after the adoption. The APL *will not be responsible for any veterinary bill or other bills* incurred by the adopter for medical treatment of the animal unless the treatment is administered at the clinic located at the APL. [Emphasis *sic.*]"

The provisions of the agreement are binding on both parties and appellant cannot avoid her responsibilities under the adoption agreement by arguing that it was not an adoption as contemplated by the statute since appellant was not adopting a child, which may require a statutory compliance.

Appellant's first assignment of error is overruled.

Appellant argues in her second assignment of error that the transaction between herself and APL constitutes a sale of goods governed by the Uniform Commercial Code. We disagree. Appellant argues that a sale occurred between herself and the APL because she paid $45. The record shows that the $45 paid by appellant was simply a fee for the adoption of the dog, which covered spaying or neutering the dog, initial shots, collar, starter kit, and two weeks of veterinary care.

By law the APL, which is part of the Ohio Humane Society, is organized specifically for the prevention of cruelty to animals. R.C. 1717.03. It is not and should not be in the business of selling animals as contemplated by the Uniform Commercial Code. See UCC 2–103 to 2–106 or R.C. 1302.01.

It was held early in *Archer v. Baertschi* (1892), 8 Ohio C.C. 12, that a city ordinance passed under a former statute that provided for the sale of dogs found running at large without a license was unconstitutional. Implicit in the *Archer* decision is the concept that the Humane Society is in the business not of selling dogs but of taking care of them. Taking care of the animals includes placing them in homes where they can be adequately cared for and protected. In order to carry out this function, R.C. 1717.05 mandates that:

"Such society may elect such officers, and make such rules, regulations, and bylaws, as are deemed expedient by its members for its own government and the proper management of its affairs."

■ Provisions governing the acquisition of the animals in the care of the APL by individuals are within the "rules and regulations" the law authorizes it to adopt. Such regulations cannot be construed to make APL a merchant within the provisions of the Uniform Commercial Code.

Appellant's argument that the APL is a merchant pursuant to R.C. 1302.01 is unfounded, as recognized by the referee, since there is no evidence that APL transactions are for profit. Since appellant failed to comply with the terms of the adoption agreement, she cannot be rewarded with damages.

Appellant's second assignment of error is overruled.

### III

In light of our disposition of appellant's second assignment of error, we consider appellant's remaining assignments of error moot and decline to address them. See App.R. 12(A)(1)(c).

*Judgment affirmed.*

SPELLACY and JAMES D. SWEENEY, JJ., concur.