[Cite as *Cleveland v. Turner*, 2019-Ohio-1241.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 107102

**CITY OF CLEVELAND**

PLAINTIFF-APPELLEE

vs.

**SCOTT R. TURNER**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cleveland Municipal Court
Case No. 17 CRB 020763

**BEFORE:** Sheehan, J., Laster Mays, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** April 4, 2019

**ATTORNEYS FOR APPELLANT**

Mark A. Stanton
Cuyahoga County Public Defender

By: Cullen Sweeney
Assistant Public Defender
310 Lakeside Ave., Suite 200
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Barbara A. Langhenry
City of Cleveland Law Director
City of Cleveland Law Department
601 Lakeside Avenue, Suite 106
Cleveland, OH 44114

J. Jeffrey Holland
1343 Sharon-Copley Rd.
P.O. Box 345
Sharon Center, OH 44274


MICHELLE J. SHEEHAN, J.:

{¶1} Defendant-appellant Scott R. Turner ("Turner") appeals from his conviction and sentence imposed by the Cleveland Municipal Court. Following a bench trial, Turner was found guilty of one count of sexual conduct with an animal (bestiality) in violation of R.C. 959.21(B). The court sentenced Turner to 90 days in jail, with credit for 17 days served, and a $750 fine. The court suspended the fine and 73 days in jail, pending completion of five years of inactive community control. Conditions of community control included (1) no contact with

animals; and (2) random home inspections conducted by the Animal Protective League ("APL").

For the reasons that follow, we affirm the conviction and sentence.

Procedural History and Substantive Facts

**{¶2}** Scott Turner was a parolee under the supervision of Jason Stasenko, parole supervisor for the sex offender unit of the adult parole authority. On May 25, 2017, Stasenko received from Hamilton County prison officials a sexually explicit letter detailing a sexual act with an animal. The letter that was intercepted by prison officials was written by Turner and mailed to Turner's incarcerated boyfriend, Robert Mayberry, who was in prison on charges relating to sexual conduct against minors. The next day, Stasenko arrested Turner for violation of his parole. During an investigation, officers discovered additional letters at Turner's home. On September 21, 2017, the city charged Turner with bestiality in violation of R.C. 959.21(B).

**{¶3}** Defendant filed a motion in limine to prohibit the introduction of his extrajudicial statement (made through the initial letter to his boyfriend) absent proof of the offense. The trial court denied Turner's motion, and the matter proceeded to a bench trial.

**{¶4}** The city presented the testimony of the parole supervisor, Stasenko, and the owner of the animal victim, Valerie Lightner. The city also admitted into evidence three letters written by Turner.

**{¶5}** Stasenko identified all three letters admitted at trial as letters written by Turner. He testified that the city's exhibit No. 1 was the letter the Hamilton County parole authority intercepted and forwarded to Stasenko, and the other two letters, exhibit Nos. 2 and 3, were letters that were confiscated at Turner's home at the time of the arrest.

Exhibit No. 1 Dated 5-13-17 and 5-15-17

{¶6} Exhibit No. 1 is a 20-page letter Turner wrote to his boyfriend, Mayberry. It is dated "5-13-17," with a noted time of "7:17 p.m." The letter contained sexually explicit language with graphic descriptions of sexual acts involving Turner, Mayberry, and a dog:

> Hey baby girl [addressing Mayberry], I'm sitting here just thinking of you and wondering what you may be doing. * * * Jovan (my roommate in case you forgot) brought his girl dog over for a bit today and him and his girl went to eat so I ate to[o] and I enjoyed it to[o]. I never knew it could taste so f***ing good baby. Damn I want to do that again but with you f***ing me while I do. Boys are next at the first opportunity I get if I do. It was a 2-year-old boxer and something else but not sure what.

{¶7} On page 15 in that same letter, which portion is dated "5-15-17" and noted with a time of "6:45 p.m.," Turner once again mentioned an animal:

> I love when you give details and talk super dirty to[o] describing the sex you want
>
> with our little friends with 4 legs and also how we will do them together my love.

Exhibit No. 2 Dated 5-6-17

{¶8} Exhibit No. 2 is a letter from Turner to Mayberry that predates exhibit No. 1 and is dated "5-6-17, 2:00 p.m. – 8:30 p.m." In this sexually explicit letter, Turner stated his intention to acquire an animal:

> I'll be sure to make it worth your while for sure. * * * I'm looking into getting a
>
> 4/legged friend still but it's hard to find the right one to get and then there's the
>
> money needed to get it also which I don't have either yet. I have to take care of
>
> you baby girl * * *.

Exhibit No. 3, Undated

{¶9} Exhibit No 3, an undated sexually explicit letter, stated:

> One other thing babe. I don't want to share you with another guy. Kay. I need to
>
> know if you still want to do that okay. I'll share you with a 4/legged friend

though. I'm really looking forward to experiencing that baby girl. I'm sure it will be exciting to have your d*** in my mouth while I'm being pounded out by a friend and to watch you get pounded to with my d*** in your mouth * * * also videoing the sounds * * * and the f***ing between us so I can watch them over and over, babe. You can too okay. * * * How would you like to have a young guy (teen) video us together? That is if you want to do any videoing at all.

**{¶10}** Stasenko testified that he spoke with Turner about exhibit No. 1. Turner admitted writing the letter but denied that any sex act with an animal occurred. According to Stasenko, Turner explained that he only wrote the information about the dog to distract his boyfriend from being sexually interested in boys. Stasenko did not find this explanation credible, and in fact, he stated that Turner's explanation was inconsistent with Turner's explicit references in the letters to engaging children in sexual conduct. Stasenko also testified that he was troubled by Turner's nickname for his penis, referring to it as "his son."

<u>Valerie Lightner, Dog Owner</u>

**{¶11}** Valerie Lightner testified concerning her dog, a two-year-old female possible pit bull/boxer mix named Athena. She owned the dog since it was nine weeks old. Lightner's boyfriend, Jovan Johnson, rented a room from the defendant. Lightner testified that on May 13, 2017, she drove to the defendant's house, with her dog, to pick up her boyfriend. She stated that it was her boyfriend's birthday and she was picking him up to buy him a birthday present, a skateboard. She was going to leave Athena in her boyfriend's bedroom for a couple of hours while they went out to purchase the skateboard. They would then pick the dog up and go to the skate park. Lightner stated that Turner offered to watch Athena while they were gone, so she agreed.

{¶12} Lightner testified that when they returned after about two hours to pick up Athena, the dog ran straight to Lightner and her boyfriend and cowered by them, which was very unusual. Lightner stated that Athena is usually "excited, jumping, happy to see you, happy that everyone is together [because] she really likes people so she likes being together with them." But on this afternoon, according to Lightner, her dog seemed scared. Lightner testified that Turner told her the dog "just laid down with him in bed for the duration of the time that we were gone."

{¶13} Lightner and her boyfriend put Athena in the car and drove to the skate park as planned. However, while at the park, Athena was acting unusual and again cowering behind Lightner, was skittish, and was barking. Because of the dog's unusual behavior, Lightner and her boyfriend brought Athena home after only 20 minutes at the park. They later canceled dinner reservations because the dog continued acting strangely, whining and licking her genitals excessively. Athena continued to "aggressively" lick her genitals and remained skittish around noises for several days. At the time of trial, she remained uncomfortable with anyone near her backside. In fact, as Lightner testified, Athena now required special care during a veterinarian examination, because she "whimpers when someone is trying to insert [a rectal thermometer] and will try to scoot away from them." Lightner testified that all of this behavior was highly unusual of Athena, and prior to the incident in May, Athena "had no issues with boundaries with people" and never had a problem with a rectal thermometer being used on her.

{¶14} Finally, Lightner testified that she did not seek treatment for Athena after the incident because "[i]t didn't seem like it was a life or death situation at the moment" and the dog's behavior began to improve after a few days. She also stated that the costs for sedating Athena for an examination was part of the reason she did not seek treatment. Lightner first

became aware of a possible issue with the defendant when Stasenko contacted her. Lightner said she never would have suspected that something like this would have happened.

{¶15} At the conclusion of the evidence, defense counsel renewed his objection to the admission of the exhibits, arguing the state presented insufficient independent evidence of corpus delicti. Defense counsel also moved the court for a Crim.R. 29 dismissal. The court denied both motions and found Turner guilty of the offense charged.

{¶16} Turner appealed his conviction and sentence, assigning four errors for our review, which we will discuss out of order for ease of discussion:

I. There was insufficient evidence to permit a reasonable trier of fact to find beyond a reasonable doubt that Scott Turner violated R.C. 959.21(B).

II. Scott Turner's conviction is against the manifest weight of the evidence.

III. The trial court erred and violated Scott Turner's due process rights by admitting Turner's extrajudicial statements into evidence without the prosecution having first established the "corpus delicti" of the crime.

IV. The trial court erred and violated Scott Turner's due process rights by granting a private non-profit entity the right to conduct random, suspicionless searches of Turner's private residence for five years.

Corpus Delicti

{¶17} In his third assignment of error, Turner contends that the court erred in admitting his extrajudicial statements without independent evidence of a crime. In support, he argues that the city failed to establish the corpus delicti to permit introduction of his purported confession.

{¶18} We note initially that the trial court is afforded wide discretion in ruling on the admissibility of evidence and this court will not reverse a trial court's decision on the admission of evidence absent an abuse of that discretion. *Cleveland v. Lowery*, 8th Dist. Cuyahoga No. 103722, 2016-Ohio-5626, ¶ 8. A trial court abuses its discretion when a decision is arbitrary,

unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶19} The corpus delicti of an offense is "the body or substance of the crime" and contains two elements: (1) the act itself; and (2) the criminal agency of the act. *State v. Cook*, 128 Ohio St.3d 120, 2010-Ohio-6305, 942 N.E.2d 357, syllabus. Generally, there must be some evidence outside the confession, tending to establish the corpus delicti, before a confession is admissible. *State v. Van Hook*, 39 Ohio St.3d 256, 261, 530 N.E.2d 883 (1988), citing *State v. Maranda,* 94 Ohio St. 364, 114 N.E. 1038 (1916); *State v. Medina*, 8th Dist. Cuyahoga No. 87778, 2006-Ohio-6758, ¶ 6.

{¶20} The amount of the independent evidence required to corroborate a confession, however, is not substantial. "The quantum or weight of such additional or extraneous evidence is not of itself required to be equal to proof beyond a reasonable doubt, nor even enough to make a prima facie case." *State v. Edwards*, 49 Ohio St.2d 31, 31, 358 N.E.2d 1051 (1976), syllabus; *Maranda* at 371. Thus, "only a modicum of evidence is necessary before a confession will be deemed admissible in the context of the corpus delicti rule." *In re M.W.*, 5th Dist. Licking No. 2018 CA 0021, 2018-Ohio-5227, ¶ 32*,* citing *State v. Smith*, 7th Dist. Jefferson No. 97 JE 25, 1999 Ohio App. LEXIS 6164 (Dec. 13, 1999). And in light of the current "vast number of procedural safeguards protecting the due process rights of criminal defendants," the burden upon the state to provide some evidence of the corpus delicti is minimal. *Edwards* at 36.

{¶21} The corroborating evidence may be direct or circumstantial. *State v. Jeffries*, 8th Dist. Cuyahoga No. 76905, 2000 Ohio App. LEXIS 3834, 11 (Aug. 24, 2000). "The state is not required to provide direct and positive proof that a crime was committed * * * ; [r]ather, the state may present circumstantial evidence which tends 'to prove the fact that a crime was committed.'"

*State v. Morgan*, 12th Dist. Clermont No. CA2013-03-021, 2014-Ohio-250, ¶ 17, quoting *State v. Fuller*, 12th Dist. Butler Nos. CA2000-11-217, CA2001-03-048, CA2001-03-061, 2002-Ohio-4110, ¶ 42, citing *Maranda* at 370.

**{¶22}** In this apparent case of first impression, there is no Ohio case law that has analyzed the corpus delicti issue in the context of R.C. 959.21. We are guided, however, by an Indiana Supreme Court case, *Shinnock v. State*, 76 N.E.3d 841 (Ind.2017), in which that court found the state presented sufficient independent evidence that the defendant had committed bestiality, and thus, the trial court properly admitted the defendant's extrajudicial statements. *Id.* We find the decision in *Shinnock* instructive.

**{¶23}** In *Shinnock*, the dog's owner discovered the defendant in his bedroom with the dog; when the owner opened the bedroom door, the dog ran out of the room and hid underneath the couch; the apartment floor was covered with dog feces and scattered dog food; and the dog's owner discovered the defendant in his underwear, with an apparent erection. The defendant admitted he had sex with the dog. At a bench trial, and over the defendant's objection, the trial court admitted evidence of the defendant's statement, and the court found the defendant guilty of bestiality. On appeal, the defendant argued that the admission violated the corpus delicti rule.

**{¶24}** Shinnock was charged and convicted under Indiana's bestiality statute, which prohibits a person from "knowingly or intentionally perform[ing] an act involving * * * any penetration of an animal's sex organ by the human male sex organ * * *. Ind. Code § 35-46-3-14(4).

**{¶25}** For purposes of determining whether the defendant's statements were admissible, the court found that the state was not required to prove all the elements of the crime, including penetration. Rather, "all the state had to present was independent evidence that provided an

inference that the crime charged was committed" and this evidence could be circumstantial. *Shinnock* 76 N.E.3d at 844. The court then determined that due to the circumstances of this particular matter, there was no direct evidence of what happened to the dog, but there was "ample circumstantial evidence" that provided an inference that the defendant committed bestiality. *Id.* The court therefore determined that the circumstantial evidence sufficiently demonstrated that the dog was a victim and the defendant committed the crime, and thus, the corpus delicti rule was satisfied and the confession was admissible. *Id.*

{¶26} In this matter, Turner was convicted of "knowingly engag[ing] in sexual conduct with an animal" in violation of R.C. 959.21(B). "Sexual conduct" is defined as

> [a]ny act done between a person and animal that involves contact of the penis of one and the vulva of the other, the penis of one and the penis of the other, the penis of one and the anus of the other, the mouth of one and the penis of the other, the mouth of one and the anus of the other, the vulva of one and the vulva of the other, the mouth of one and the vulva of the other, any other contact between a reproductive organ of one and a reproductive organ of the other, or any other insertion of a reproductive organ of one into an orifice of the other.

R.C. 959.21(A)(4)(a).

{¶27} Here, like in *Shinnock*, there is no direct evidence of a crime against the dog. We therefore look to the circumstantial evidence provided for some evidence that corroborates Turner's statements made in his letters to his boyfriend.

{¶28} Lightner testified that she left Athena with Turner for a couple of hours and, upon retrieving the dog, Athena ran straight to her owner and cowered in fear behind her. According to Lightner's testimony, this behavior was very unusual for Athena, who was typically happy and excited to be with people. Only after staying with Turner, Athena became skittish around people and began aggressively licking her genitals. This behavior had never occurred before staying with Turner. Additionally, after staying with Turner, Athena became uncomfortable

with anyone near her backside and she would whimper and attempt to hide during a veterinarian's attempt to insert a rectal thermometer. This behavior never existed before visiting Turner. And according to Lightner, Turner stated that Athena stayed in bed with him during her entire two-hour stay.

{¶29} In order to satisfy the corpus delicti rule for purposes of admissibility of a defendant's extrajudicial statement, the city is not required to prove the elements of a prima facie case; rather, the city need only provide *some evidence* of a crime. *Edwards*, 49 Ohio St.2d at 36, 358 N.E.2d 1051. In light of the minimal requirements necessary to satisfy the corpus delicti rule, and considering the above circumstantial evidence, we find the city produced sufficient circumstantial evidence corroborating Turner's statements concerning sexual acts with a "girl dog" or "little friends with 4 legs."[1]

{¶30} The city produced some evidence tending to establish the dog was a victim — through its strange behavior — and the defendant committed the crime by virtue of the dog's behavior only after being left alone with Turner. The fact that the dog's owner did not immediately suspect sexual abuse of the animal and seek treatment is not surprising considering the highly unusual nature of the crime, nor does the owner's lack of suspicion invalidate the evidence of the dog's unusual behavior or the timing of this behavior when left alone with the

---

[1]In his reply brief, Turner cites to *In re T.W.*, 8th Dist. Cuyahoga No. 106231, 2018-Ohio-3275, for the proposition that the dog owner's observations of behavioral changes cannot be used to corroborate a defendant's own statements for purposes of establishing the corpus delicti. In *In re T.W.*, this court determined that a mother's observations of her young child's behavior could not be admitted as "independent proof" of the sexual abuse under Evid.R. 807(3). *Id.* at ¶ 9. *In re T.W.* is distinguishable for multiple reasons. In that case, there was no confession or statements made by the defendant, and the court analyzed the mother's testimony under the hearsay rules. The court in *In re T.W.* acknowledged "a confession to committing a crime constitutes independent proof" per Evid.R. 801(D)(2)(e) and 807(A)(3). *In re T.W.* ¶ 11-13. Here, we have Turner's own statements regarding the purported sexual conduct, and this court analyzes the dog owner's observations under the corpus delicti rule, where the burden on the state to provide some evidence that corroborates the defendant's statements is minimal. Accordingly, we find that *In re T.W.* does not apply.

defendant. The trial court's admission of Turner's statements was therefore proper and not an abuse of discretion.

{¶31} Turner's third assignment of error is overruled.

Sufficiency of the Evidence

{¶32} In his first assignment of error, Turner contends that the city failed to provide sufficient evidence to support a conviction for bestiality. In support, he argues that the city's case relies upon a "vague statement" in a letter to his boyfriend and "non-specific observations" of a dog's behavior. Turner essentially argues that the city lacked direct evidence of the offense, namely witnesses to the sexual conduct, physical evidence, or a medical examination of the dog.

{¶33} When assessing a challenge of sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

{¶34} It is well established that the elements of an offense may be proven by direct evidence, circumstantial evidence, or both. *See State v. Durr*, 58 Ohio St.3d 86, 568 N.E.2d 674 (1991). Direct evidence exists when "a witness testifies about a matter within the witness's personal knowledge such that the trier of fact is not required to draw an inference from the

evidence to the proposition that it is offered to establish." *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13. Circumstantial evidence, on the other hand, is evidence that requires "the drawing of inferences that are reasonably permitted by the evidence." *Id. See also State v. Hartman*, 8th Dist. Cuyahoga No. 90284, 2008-Ohio-3683, ¶ 37 ("[c]ircumstantial evidence is the proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind").

{¶35} Circumstantial and direct evidence are of equal evidentiary value. *State v. Santiago*, 8th Dist. Cuyahoga No. 95333, 2011-Ohio-1691, ¶ 12. "Although there are obvious differences between direct and circumstantial evidence, those differences are irrelevant to the probative value of the evidence." *Cassano* at ¶ 13, citing *State v. Treesh*, 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001). In some cases, circumstantial evidence may be "'more certain, satisfying and persuasive than direct evidence.'" *State v. Lott*, 51 Ohio St.3d 160, 167, 555 N.E.2d 293 (1990), quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960). And a "conviction can be sustained based on circumstantial evidence alone." *State v. Franklin*, 62 Ohio St.3d 118, 124, 580 N.E.2d 1 (1991), citing *State v. Nicely*, 39 Ohio St.3d 147, 154-155, 529 N.E.2d 1236 (1988).

{¶36} Turner was convicted of bestiality in violation of R.C. 959.21, a second-degree misdemeanor. As discussed in the previous assignment of error, the statute prohibits a person from "knowingly engag[ing] in sexual conduct with an animal." R.C. 959.21(B). "Sexual conduct" includes any act involving contact of the penis of one and the vulva of another, the penis of one and the anus of another, the mouth of one and the anus or vulva of the other, or insertion of a reproductive organ of one into an orifice of the other. R.C. 959.21(A)(4)(a).

**{¶37}** Here, the city presented three letters Turner wrote to his boyfriend, a sexual offender, in prison. All of the letters are sexually explicit and contain graphic details of various sex acts. In a letter dated May 6, 2017, in the midst of discussing sex with his boyfriend, Turner expressed a desire to acquire an animal, stating, "I'm looking into getting a 4/legged friend * * * but it's hard to find the right one to get and then there's the money needed. * * * I have to take care of you baby girl." In an undated letter, Turner told his boyfriend that he does not want to share him with another guy, but he would "share [him] with a 4/legged friend" and that he was "really looking forward to experiencing that." Immediately thereafter, Turner proceeded to graphically describe various sexual scenarios. In a third letter, in a portion dated May 13, 2017, "7:17 p.m.," Turner described an experience he had with a dog that his roommate, Jovan, brought home:

> Jovan * * * brought his girl dog over for a bit today and him and his girl went to eat so I ate to[o] and I enjoyed it to[o]. I never knew it could taste so f*** ing good baby. Damn I want to do that again but with you f*** me while I do. * * * It was a 2-year-old boxer and something else but not sure what.

In that same letter, in a portion dated May 15, 2017, Turner stated that he loved when his boyfriend described "the sex you want with our little friends with 4 legs and also how we will do them together my love."

**{¶38}** Valerie Lightner testified that she brought her dog, a two-year-old female boxer mix, to her boyfriend's house. Her boyfriend, Jovan, is Turner's roommate. Lightner testified that she left her dog alone with Turner for a couple of hours in the afternoon of May 13, 2017. Turner told Lightner that he and the dog laid in Turner's bed the entire time Lightner was gone. Lightner testified that when she picked up the dog from Turner's place, the dog ran to her and

cowered in fear behind her, which was very unusual behavior for the dog. For the next several days, the dog licked her genitals excessively, she was skittish around noises, and she barked at people, which was all unusual behavior for Lightner's dog. Finally, Lightner testified that her dog was no longer comfortable with a veterinarian examination and rectal thermometer insertion. After her stay with Turner, she began to whimper and cower, covering her backside, when anyone approached her behind.

{¶39} Viewing this evidence in a light most favorable to the prosecution, we find that a rational trier of fact could conclude that Turner engaged in sexual conduct with a dog. It is reasonable for a factfinder to infer from the context of Turner's letters, the circumstances and manner in which Turner became acquainted with the dog, and the uncharacteristically skittish behavior the dog exhibited after being left alone with Turner, especially the dog's excessive licking of her genitals and her resistance to a rectal thermometer, that Turner placed his mouth on the dog's genitals. Thus, Turner's conviction for bestiality was supported by sufficient evidence.

{¶40} Turner's first assignment of error is overruled.

## Manifest Weight of the Evidence

{¶41} In his second assignment of error, Turner contends that his conviction is against the manifest weight of the evidence.

{¶42} A manifest weight challenge questions whether the state has met its burden of persuasion. *Thompkins*, 78 Ohio St.3d at 390, 678 N.E.2d 541. Also, unlike a challenge to the sufficiency of the evidence, a manifest weight challenge raises a factual issue.

> "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a

manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

A finding that a conviction was supported by the manifest weight of the evidence, however, necessarily includes a finding of sufficiency. *State v. Howard*, 8th Dist. Cuyahoga No. 97695, 2012-Ohio-3459, ¶ 14, citing *Thompkins* at 388.

**{¶43}** "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Although the reviewing court considers the credibility of witnesses in a challenge to the manifest weight of the evidence, it does so "with the caveat that the trier of fact is in the best position to determine a witness' credibility through its observation of his or her demeanor, gestures, and voice inflections." *State v. Campbell*, 8th Dist. Cuyahoga Nos. 100246 and 100247, 2014-Ohio-2181, ¶ 39.

"Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility."

*State v. Robinson*, 8th Dist. Cuyahoga No. 99290, 2013-Ohio-4375, ¶ 56, quoting *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 Ohio App. LEXIS 3709 (Aug. 22, 1997).

**{¶44}** A factfinder is free to believe all, some, or none of the testimony of each witness appearing before it. *State v. Ellis*, 8th Dist. Cuyahoga No. 98538, 2013-Ohio-1184, ¶ 18.

**{¶45}** Turner contends that his conviction is against the manifest weight of the evidence. In support, Turner reiterates his sufficiency argument and remarks upon Lightner's testimony, arguing that Lightner did not suspect sexual abuse until the parole supervisor contacted her, nor

did she seek medical attention for her dog's purportedly unusual behavior. Additionally, while Turner concedes he wrote the letters, he claims that the statement concerning the dog was fantastical, or imaginary, and was designed to distract his boyfriend from thinking about engaging in sexual acts with children.

{¶46} We cannot find the factfinder lost its way and created a manifest miscarriage of justice in this case. First, having overruled the sufficiency arguments, we need not consider them here. Second, Turner's argument essentially attacks the credibility of the dog owner, questioning the authenticity of Lightner's observations of Athena's behavior and the timing of Lightner's concern. We are mindful, however, of the factfinder's role in assessing witness credibility. The record shows that Lightner did observe that something was wrong with her dog, and in response to Athena's uncharacteristically odd behavior, Lightner removed her from stressful situations, cancelled dinner plans, and cared for Athena in a way that she believed was appropriate under the circumstances. Noting that the matter was not one of "life and death," Lightner did not seek medical treatment for Athena. It is likely that the factfinder considered the highly unusual factual scenario in evaluating Lightner's reaction to her dog's behavior and the fact that she did not immediately suspect sexual abuse, which it is free to do.

{¶47} It is also within the factfinder's discretion to disbelieve Turner's explanation for his statement concerning Lightner's dog. Although the letters contain many references to Turner's desire to perform certain sexual acts with his boyfriend in the future, the statement in the May 13 letter describes with vivid detail an act that occurred earlier in the day on May 13 with a "2-year-old boxer." And Lightner's testimony corroborates these details. Furthermore, Turner's letters include references to engaging children in sexual conduct, stating "boys are next at the first opportunity I get" and offering to have a "young guy (teen)" videotape Turner and his

boyfriend engaging in sexual acts.  These statements are inconsistent, to say the least, with Turner's purported attempt to "distract" his boyfriend from desiring sex with children.

{¶48} On this record, and in deferring to the factfinder's credibility determinations, we cannot find this is the exceptional case in which the evidence weighs heavily against the conviction.

{¶49} Turner's second assignment of error is overruled.

Community Control Sanctions

{¶50} In his final assignment of error, Turner objects to one of the conditions of his community control sanctions:  random home inspections conducted by the APL.  Turner contends that the trial court's home inspection condition violates R.C. 2951.02(A), because (1) he has no probation officer, because he is on inactive probation; (2) the APL is not an authorized probation officer with the authority to conduct the searches of Turner's home; and (3) the random searches would violate his constitutional right to be free of unreasonable searches and seizures.

{¶51} R.C. 2951.02(A) provides:

During the period of a misdemeanor offender's community control sanction * * *, authorized probation officers who are engaged within the scope of their supervisory duties or responsibilities may search, with or without a warrant * * * real property in which the offender has a right, title, or interest * * * if the probation officers have reasonable grounds to believe that the offender is not abiding by the law or otherwise is not complying with the conditions of the misdemeanor offender's community control sanction * * *.

{¶52} Thus, R.C. 2951.02(A) authorizes warrantless searches during an offender's misdemeanor community control where, for example, an officer who conducts the search

possesses "reasonable grounds" to believe that the probationer has failed to comply with the terms of his or her probation. *See State v. Helmbright*, 2013-Ohio-1143, 990 N.E.2d 154 (10th Dist.). The statute therefore provides limitations on the "authorized probation officers" who conduct a search of a probationer's person or property in the course of their duties. It does not limit, nor does it address, the trial court's ability to fashion an appropriate sentence for an offender. In other words, R.C. 2951.02(A) is not a prohibition on an imposition of community control conditions such as APL-conducted home inspections.

{¶53} Under R.C. 2929.21, a trial court enjoys broad discretion in fashioning a sentence for misdemeanors. *Cleveland v. Meehan*, 8th Dist. Cuyahoga No. 100202, 2014-Ohio-2265, ¶ 7. And the overriding purposes of misdemeanor sentencing are "to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.21(A).

{¶54} Thus, "[t]he General Assembly has * * * granted broad discretion to trial courts in imposing community-control sanctions." *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 10. In imposing community control, the court may impose "any other conditions of release under a community control sanction that the court considers appropriate." R.C. 2929.25(A)(1)(a). Further, the court may impose "any other sanction that is intended to discourage the offender or other persons from committing a similar offense if the sanction is reasonably related to the overriding purposes and principles of misdemeanor sentencing." R.C. 2929.27(C).

{¶55} We review the trial court's imposition of community control sanctions for an abuse of discretion. *State v. Cooper*, 2016-Ohio-8048, 75 N.E.3d 805, ¶ 31 (8th Dist.), citing *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 10. Notwithstanding this

broad discretion, the trial court's discretion "is not limitless." *State v. White*, 10th Dist. Franklin No. 14AP-1027, 2015-Ohio-3844, ¶ 5, citing *Talty* at ¶ 11.

{¶56} A court may impose additional community control conditions as long as those conditions are "not * * * overbroad and [are] reasonably relate[d] to the goals of community control: 'rehabilitation, administering justice, and ensuring good behavior.'" *State v. Mahon*, 8th Dist. Cuyahoga No. 106043, 2018-Ohio-295, ¶ 7, quoting *Talty*. To determine whether a condition of community control serves those purposes, "courts should consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." *State v. Jones*, 49 Ohio St.3d 51, 53, 550 N.E.2d 469 (1990). A trial court does not abuse its discretion where all three prongs of the *Jones* test are satisfied. *Mahon* at ¶ 8, citing *White*.

{¶57} Here, Turner was convicted of engaging in sexual conduct with a dog. The condition concerning random home inspections conducted by the APL has an obvious relationship to the crime for which Turner was convicted in that the APL will help ensure that Turner has no contact with animals or engages in sexual conduct with an animal. The condition is also reasonably related to rehabilitating Turner, since he will presumably be able to own animals, including dogs, once he has completed his community control. And the condition relates to future criminality and serves the statutory ends of community control since the home inspections will ensure that Turner has little opportunity to engage in sexual conduct with animals during the term of his community control. Thus, we find the condition satisfies the *Jone*s test. Finally, we do not find the condition allowing random home inspections to be overly broad. Turner is prohibited from having contact with animals. And the record shows that

Turner did not object to this condition. The home inspections would be conducted by the APL for the specific purpose of ensuring that Turner is not in contact with any animals.

{¶58} To the extent the defendant claims the APL is a private entity not authorized to conduct searches of Turner's home, we find no merit. We note initially that Turner did not object to the APL's involvement. At sentencing, defense counsel advised the court that Turner is subject to periodic inspections as a condition of his parole, and he offered that the APL could contact Turner's parole officer with any need to conduct an inspection for animals in order to avoid duplicative inspections:

> [Turner] has no objection to and would agree to any — no contact, no ownership of any kind. He currently has no pets. He has no desire in the near future to own a pet. We would ask that the court not grant intrusive home inspection. He is on post release control for a period of five years until * * * May 3, 2021 * * *. And they do periodic inspections. And certainly the city or the APL could notify the parole officer to check on that. We would ask not to duplicate and make it doubly intrusive.

{¶59} Furthermore, the APL is a part of the humane society and assumes its roles. *See* Chapter R.C. 1717; *Slodov v. Animal Protective League*, 90 Ohio App.3d 173, 176, 628 N.E.2d 117 (8th Dist.1993) (finding the APL, a part of the humane society, "is organized specifically for the prevention of cruelty to animals"). The humane society was organized for the purpose of "the inculcation of humane principles and the enforcement of laws for the prevention of cruelty, especially to children and animals." *Dunn v. Licking Cty. Humane Soc.*, 5th Dist. Licking No. 14-CA-101, 2015-Ohio-2561, ¶ 43, citing R.C. 1717.05. And under R.C. 1717.06, the county humane society may appoint humane agents "whose purpose is to prosecute any person guilty of

an act of cruelty to animals or other persons," including the power to arrest. *Studer v. Seneca Cty. Humane Soc.*, 3d Dist. Seneca No. 13-99-59, 2000-Ohio-1823. Those same humane agents would constitute law enforcement officers authorized to request and execute a search warrant. *State v. Morgan*, 2014-Ohio-2472, 14 N.E.3d 452, ¶ 12 (12th Dist.). While R.C. 2929.25 places an offender who is on community control under the supervision of the court or the probation department, a court has authority to appoint a humane agent of the APL to assist with the enforcement of a probationer's community control conditions. *See generally State v. Helmbright*, 10th Dist. Franklin Nos. 11AP-1080 and 11AP-1081, 2013-Ohio-1143.

{¶60} In light of the above, we find the community control condition allowing random home inspections performed by the APL satisfies the requirements outlined in *Jones*, 49 Ohio St.3d at 53, 550 N.E.2d 469, and is not overbroad. There is little doubt that the home inspections provide an effective means of ensuring compliance with the court's "no contact" order. And at sentencing, the defendant did not contest that fact; rather, he objected to the fact that these inspections would be duplicative of the sentence already in place on a different offense. But the crime Turner committed in this case is a new offense deserving of a separate punishment. The trial court considered the overriding principles and purposes of sentencing, and in an effort to discourage Turner from committing a similar offense, it exercised its discretion and evidently determined that the less onerous inactive probation along with home inspections was the most effective means of achieving those goals.

{¶61} We therefore find the trial court did not abuse its discretion in fashioning a sentence that included the APL's involvement in conducting home inspections designed to rehabilitate, administer justice, and ensure Turner's good behavior.

{¶62} Turner's final assignment of error is overruled.

**{¶63}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

ANITA LASTER MAYS, P.J., CONCURS;
EILEEN A. GALLAGHER, J., DISSENTS (WITH SEPARATE DISSENTING OPINION ATTACHED)

EILEEN A. GALLAGHER, J., DISSENTING:

**{¶64}** I respectfully dissent from the opinion of my learned colleagues. It is my opinion that there was insufficient evidence to convict the appellant and I would sustain his first assignment of error and vacate his conviction.

**{¶65}** This case is one of first impression in the state of Ohio and, as such, I refer to case law where a child victim is incompetent, or unable, to testify as well as Evid.R. 807(B). I recognize that Evid.R. 807 is titled "Hearsay exceptions; Child statements in abuse cases" but there is nothing else that is comparable and specific to this case, upon which to rely.

**{¶66}** Therefore, I find *In re T.W.*, 2018-Ohio-3275, 112 N.E.3d 527 (8th Dist.), to be instructive. In that case, a juvenile was charged with crimes that if committed by an adult

would constitute kidnapping, gross sexual imposition and rape of his four-year-old sibling who was found not to be competent to testify at the adjudicatory hearing. The evidence presented at the hearing was testimony from the children's mother and father about the child-victim's disclosure and the child's statements to a social worker working at the hospital where the child was treated. There was no medical or physical evidence confirming sexual abuse. However, the mother testified to behavioral changes that she had observed in the alleged child-victim.

{¶67} The Supreme Court has recognized that expert testimony in sexual abuse cases is admissible to show that the victim's behavior is consistent with behavior observed in sexually abused children, generally. *State v . Stowers*, 81 Ohio St.3d 260, 262, 1998-Ohio-632, 690 N.E.2d 881. Such expert testimony is permitted precisely because a lay person lacks the specialized knowledge about the behavioral characteristics that result from abuse. *Id.*; *see also State v. Boston*, 46 Ohio St.3d 108, 128, 545 N.E.2d 1220 (1989) ("Most jurors would not be aware, in their everyday experiences, of how sexually abused children might respond to abuse * * * and the common experience of a juror may represent a less-than-adequate foundation for assessing whether a child has been sexually abused."). In *T.W.* this court found that, without expert testimony to interpret or explain, the mother's observations of the child's behavioral changes were not independent proof as contemplated under Evid.R. 807(A)(3).

{¶68} In this case, there was no expert testimony offered to explain the dog-victim's behavior. The dog's owner testified that she observed the dog behaving atypically after she picked her up from the appellant's home where she left the dog in his care for several hours. The owner sought no veterinary attention for the animal. As such, and similar to *T.W.*, there is no expert testimony demonstrating that the observed behavioral characteristics are independent proof of a sexual act having occurred.

**{¶69}** "The corpus delicti of a crime is the body or substance of the crime, included in which are usually two elements: (1) the act and (2) the criminal agency of the act." *State v. Edwards*, 49 Ohio St.2d 31, 31, 358 N.E.2d 1051 (1976), at paragraph one of the syllabus. Where there is a confession that tends to establish the corpus delicti of a crime there must be "'*some* evidence outside of the confession that tends to prove *some* material element of the crime charged'" before the confession is admissible. (Emphasis sic.) *State v. Van Hook*, 39 Ohio St.3d 256, 261, 530 N.E.2d 883 (1988), quoting *State v. Maranda*, 94 Ohio St. 364, 114 N.E. 1038 (1916), paragraph two of the syllabus.

**{¶70}** The majority relies on an Indiana case, *Shinnock v. State*, 76 N.E.3d 841 (Ind.2017), as the basis for why appellant's letters were admissible. I think that case is distinguishable on its facts. While the court in *Shinnock* found "ample" circumstantial evidence of bestiality as the basis for concluding the defendant's confession was admissible, such evidence is not present here. In *Shinnock*, the dog did not greet its owner as usual as it had been shut in the defendant's bedroom with the defendant. When the owner opened the door, the dog immediately and atypically ran and hid under a couch. The floor was covered in dog feces which was also unusual. Most significantly, the defendant was found in his underwear and with an erection. The court thus found that the corpus delicti was established: these facts "suffice[d] to demonstrate that both the dog was a victim and that [the defendant] committed the crime." *Id.* at 844. The only similarity that *Shinnock* bears with this case that both contain evidence that the dog behaved atypically.

**{¶71}** Without evidence that the appellant committed a crime or expert testimony to establish that a sexual act did occur, the appellant's writings to his incarcerated partner, however

distasteful they may be, should not have been admitted and without which, no conviction should stand.

{¶72} Further, I take issue with the trial court's sentencing order which includes the condition on his five-year term of inactive probation that "APL permitted random inspection." This allows employees of the Cleveland Animal Protective League, a private nonprofit agency to enter the appellant's home. I recognize that agents of the APL, as a humane society, have authority, under Chapter 1717 of the Ohio Revised Code to arrest persons found violating that Chapter but there is no authority provided for them to enter a private home for inspection.

{¶73} The appellant was placed on inactive probation, a legal fiction. As a condition of such supervision, a probation officer, as a sworn officer of the court, may gain warrantless entry to a person's home. To grant a private citizen this same authority is unconscionable.