[Cite as *Eltibi v. Kocsis*, 2021-Ohio-2911.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| COLLEN ELTIBI | C.A. No.     29885 |
|     Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE STOW MUNICIPAL COURT COUNTY OF SUMMIT, OHIO |
| KRISTIN KOCSIS | |
|     Appellant | CASE No.     2020-CVH-1185 |

## DECISION AND JOURNAL ENTRY

Dated: August 25, 2021

SUTTON, Judge.

{¶1} Plaintiff-Appellant, Colleen Eltibi, appeals the judgment of the Stow Municipal Court denying her complaint for replevin. For the reasons that follow, this Court reverses.

## I.

## Relevant Background Information

{¶2} This case involves a dispute over the ownership of a dog named Albus following the termination of a romantic relationship. Colleen Eltibi and Kristin Kocsis were involved in a romantic relationship. In August 2015, Ms. Eltibi and Ms. Kocsis traveled to Madison County, Ohio, for the purpose of adopting a dog from the Madison County Humane Society. Ms. Eltibi completed and signed adoption paperwork, including an adoption contract entitled "Humane Society Madison County Pet Adoption Contract," to transfer ownership of and responsibility for the care of the dog from the Madison County Humane Society to Ms. Eltibi. Notably, paragraph 14 of the adoption contract states:

If at any time after the 14 days [Colleen Eltibi] cannot keep this pet, [Colleen Eltibi] will contact the HSMC and make arrangements with the shelter to bring back the pet or they will assist in finding a place for the pet. [Colleen Eltibi] will not take the pet to a different shelter or give the pet away without first contacting the HSMC.

This pet will not be used for medical or experimental purposes or for dog fighting. This pet will not be abused, neglected, or abandoned. If for any reason [Colleen Eltibi is] unable to keep this pet, [Colleen Eltibi] will contact the HSMC.

[Colleen Eltibi has] read, understand[s], and agree[s] to all of the above provisions. [Colleen Eltibi] understand[s] that if [she] fail[s] to comply with these terms the pet may be removed from [her] custody and returned to the HSMC.

Ms. Eltibi also signed a waiver document from the Madison County Humane Society indicating she "fully [understood her] financial responsibilities as a new owner[.]" Ms. Kocsis' name and information does not appear on the adoption contract or paperwork, and she did not sign any of the adoption documents.

{¶3} After Albus was adopted, the couple subsequently terminated their romantic relationship. The parties, however, continued to make arrangements by which both, Ms. Eltibi and Ms. Kocsis, were able to spend time with Albus independent of one another. The parties continued this practice up until May 2020, when, during a time Albus was with Ms. Kocsis, she emailed Ms. Eltibi that she would not be returning Albus and told Ms. Eltibi not to come onto the property where Ms. Kocsis and Albus were staying. In response to Ms. Kocsis' failure to return Albus, Ms. Eltibi filed a complaint for replevin in the Stow Municipal Court, seeking the return of the dog. Ms. Kocsis subsequently filed counterclaims alleging unjust enrichment and conversion.

**The Trial Court Proceedings**

{¶4} The trial court set the case for a hearing before a magistrate on August 19, 2020. At the hearing, Ms. Eltibi testified she was the sole owner of Albus. Ms. Eltibi further testified:

(1) it was her idea to get a dog; (2) she searched for a dog; and (3) she was the sole person who signed Albus' adoption documents. Ms. Eltibi admitted that Ms. Kocsis picked the name "Albus," and she allowed Ms. Kocsis to spend time with Albus after the termination of their romantic relationship.

{¶5} In support of her argument regarding ownership, Ms. Eltibi provided the trial court with several documents establishing the adoption of Albus from the Madison County Humane Society. Besides the adoption contract and signed waiver described above, Ms. Eltibi also presented a receipt from the Madison County Humane Society for the $130 fee that she paid when she adopted Albus. Ms. Eltibi's name, and only Ms. Eltibi's name, appears on the receipt. Ms. Eltibi further testified that while Albus was initially registered by Ms. Eltibi in Madison County, Ohio, the dog was subsequently registered at Ms. Eltibi's address in Cuyahoga County, but in Ms. Kocsis' name. Ms. Eltibi testified she had asked Ms. Kocsis to complete the paperwork for Albus' registration on one occasion because Ms. Eltibi had to work, and Ms. Kocsis was available to handle this task. However, Ms. Eltibi testified she was not aware that when Ms. Kocsis performed the task, she registered Albus in her own name instead of Ms. Eltibi's name. Ms. Eltibi also presented email communication in which Ms. Kocsis sought Ms. Eltibi's permission to spend time with Albus and email communication showing Ms. Kocsis thanked Ms. Eltibi for allowing the visitation.

{¶6} Ms. Kocsis, however, testified she was the owner of Albus. When asked why she did not sign the adoption documents, Ms. Kocsis testified she did not feel comfortable signing because Ms. Eltibi used a friend's address on the documents to avoid dealing with her landlord. Ms. Kocsis also provided bank records indicating she had paid some expenses for Albus,

including expenses from PetSmart and BarkBox. Ms. Kocsis further provided the trial court with some veterinary bills in her name.

{¶7} Ms. Kocsis also testified she was in a new relationship, and when she would leave the state to visit her boyfriend, Ms. Eltibi became "retaliatory" towards her. According to the timeline presented at trial, it appears this is when Ms. Kocsis decided not to return Albus to Ms. Eltibi.

{¶8} Additionally, Ms. Kocsis testified regarding two occasions, in her memory, where Ms. Eltibi allegedly hurt Albus. However, Ms. Kocsis admitted she never witnessed Ms. Eltibi hurting Albus. Instead, Ms. Kocsis testified Ms. Eltibi told her over the phone that she hurt Albus by hitting him on the nose on one occasion two years ago. On another occasion, Ms. Kocsis alleged Ms. Eltibi told her that Ms. Eltibi had grabbed Albus by the scruff of his neck, causing him to yelp. This incident also occurred several months before Ms. Kocsis unilaterally decided to keep Albus and not return him to Ms. Eltibi.

{¶9} After hearing all of the testimony and evidence, the magistrate issued a decision. The magistrate found the parties had adopted Albus during the course of their romantic relationship. Since the time of the adoption, the magistrate found both Ms. Eltibi and Ms. Kocsis had actively participated in Albus' care and ownership by contributing both time and money. The magistrate found the evidence and testimony established Albus was jointly owned by Ms. Eltibi and Ms. Kocsis. However, the magistrate was unable to conclude that either party had a greater ownership interest in the dog than the other party. The magistrate found neither party proved by the preponderance of the evidence that they had an ownership interest of more than 50% in Albus. Therefore, the magistrate found neither party could prevail on her ownership claim. As such, the magistrate declined to change the status quo of Albus' location to have him

returned to Ms. Eltibi. The magistrate recommended judgment be awarded to Ms. Kocsis on Ms. Eltibi's complaint for replevin, and Ms. Eltibi be awarded judgment on Ms. Kocsis' counterclaims for unjust enrichment and conversion.

{¶10} Ms. Eltibi timely objected to the magistrate's decision. The trial court subsequently issued an order adopting the magistrate's decision, including the finding that Ms. Eltibi and Ms. Kocsis were co-owners of Albus. Ms. Eltibi appealed, assigning two errors for our review.

## II.

## ASSIGNMENT OF ERROR I

**THE JUDGMENT OF THE TRIAL COURT WAS BASED ON INSUFFICIENT EVIDENCE AND SHOULD BE REVERSED.**

{¶11} In her first assignment of error, Ms. Eltibi argues the trial court erred in denying Ms. Eltibi's complaint for replevin because both the trial court's finding that Ms. Eltibi and Ms. Kocsis were co-owners of the dog, and subsequent denial of Ms. Eltibi's complaint in replevin, were supported by insufficient evidence. For the following reasons, we agree.

## Standard of Review

{¶12} As this Court has previously stated regarding challenges based on sufficiency of the evidence in civil cases:

> [s]ufficiency has been described as a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. In essence, sufficiency is a test of adequacy. [A] challenge to the sufficiency of the evidence asks whether the plaintiff has met his or her burden of production by proving each element by a preponderance of the evidence.

(Internal citations and quotations omitted.) *Certain Care, LLC v. Mikitka*, 9th Dist. Lorain No. 19CA011544, 2020-Ohio-3544, ¶ 5. Further, this Court has stated:

[w]hether the evidence is legally sufficient to sustain a verdict is a question of law. This Court reviews questions of law de novo. In conducting a de novo review, this Court gives no deference to the trial court's legal conclusions. However, this Court will not reverse a trial court's factual finding if it is supported by competent, credible evidence.

(Internal citations and quotations omitted.) *J. Bowers Constr. Co., Inc. v. Gilbert*, 9th Dist. Summit No. 27044, 2014-Ohio-3576, ¶ 21.

## Actions In Replevin

{¶13} This Court previously considered replevin actions in *Schneider v. Schneider*, 9th Dist. Lorain No. 07CA009219, 2008-Ohio-4495, ¶ 14, as follows:

[r]eplevin is an action whereby the owner or person entitled to repossession of goods or chattels may recover those goods or chattels from one who wrongfully detains them. Replevin is a claim for wrongful detention of goods, but it does not require an unlawful taking. The action is strictly a possessory action, and it lies only in behalf of one entitled to possession against one having, at the time the suit is begun, actual or constructive possession and control of the property. **The plaintiff in a replevin action is required to prove that he is entitled to possession of the property and that, at the time the suit was filed, the defendant had actual or constructive possession and control of it.**

(Emphasis added.) (Internal citations and quotations omitted). As stated above, "[r]eplevin does not even require an 'unlawful taking.' The plaintiff in replevin need only prove that he is entitled to certain property and the property is in the defendant's possession." *Wysocki v. Oberlin Police Dept.*, 9th Dist. Lorain No. 13CA010437, 2014-Ohio-2869, ¶ 7, quoting *Wilson v. Jo-Ann Stores, Inc.*, 9th Dist. Summit No. 26154, 2012-Ohio-2748, ¶ 11.

{¶14} In the present matter, Ms. Eltibi had the burden to persuade the trier of fact, by the preponderance of evidence, that she was entitled to possession of Albus. *See Schneider at* ¶ 16, citing *Mulhollen v. Angel*, 10th Dist. Franklin No. 03AP-1218, 2005-Ohio-578, ¶ 23. Ms. Kocsis had no burden of proof regarding the issue of replevin. *Id.*

### Dog Ownership in Ohio

{¶15} Under Ohio law, dogs, such as Albus, are considered personal property. R.C. 955.03. Thus, in order to prevail on a cause of action for replevin, Ms. Eltibi had to establish she was entitled to possession of Albus and, at the time the suit was filed, Ms. Kocsis had actual or constructive possession of the dog.

{¶16} Further, R.C. 955.11(B) effectuates the transfer of ownership of dogs, which states, in relevant part:

> [u]pon the transfer of ownership of any dog, the seller of the dog shall give the buyer a transfer of ownership certificate that shall be signed by the seller. The certificate shall contain the registration number of the dog, the name of the seller, and a brief description of the dog.

R.C. 955.11(B). In *Lucas Cty. Pit Crew v. Fulton Cty. Dog Warden*, 6th Dist. Fulton No. F-16-003, 2016-Ohio-8526, ¶ 14, the Sixth District Court of Appeals upheld a trial court's ruling that possession of a dog did not establish ownership; the appellant did not become an owner of a dog until a transfer of ownership was completed in accordance with R.C. 955.11(B).

{¶17} At trial, Ms. Eltibi testified she was the owner of Albus. In support of her argument, she presented the executed adoption contract evidencing the transfer of ownership of Albus from the Madison County Humane Society to Ms. Eltibi. The adoption contract contained the necessary information to qualify as a transfer of ownership certificate under R.C. 955.11(B). The adoption contract contained a registration number, a brief description of the dog, and both Ms. Eltibi and a representative from the Madison County Humane Society signed the contract. The document established Ms. Eltibi was the sole owner of Albus pursuant to R.C. 955.11(B) and satisfied Ms. Eltibi's burden of establishing ownership in a replevin action.

{¶18} To rebut Ms. Eltibi's argument, Ms. Kocsis testified she was the owner of Albus. In support of her argument, she presented receipts showing payments for some of Albus' care.

She also testified she registered Albus in her name in Cuyahoga County.[1] However, Ms. Kocsis did not present any evidence establishing a transfer of ownership of Albus from Ms. Eltibi to Ms. Kocsis pursuant to R.C. 955.11(B) and her name does not appear on the adoption contract or other documents Ms. Eltibi presented. Ms. Kocsis testified she "always believed" she was an owner of Albus, but that fact is not reflected in any of the documents related to the adoption of Albus that were provided to the trial court. Importantly, the adoption contract executed between Ms. Eltibi and the Madison County Humane Society specified Ms. Eltibi was to return Albus to the Madison County Humane Society in the event she no longer wished to take care of him and indicated Ms. Eltibi was not authorized to give the dog to someone else.[2] While the record clearly reflects Ms. Kocsis loved and cared for Albus, there is no evidence in the record supporting the conclusion that Ms. Kocsis had any legally recognizable ownership interest in Albus. The record and applicable law do not support the trial court's conclusion that Ms. Eltibi and Ms. Kocsis were co-owners of Albus.

{¶19} Further, it is undisputed that after their romantic relationship ended, Ms. Eltibi and Ms. Kocsis had an unwritten agreement allowing Ms. Kocsis to spend specific periods of time with Albus without Ms. Eltibi present. However, the last time Ms. Eltibi dropped Albus off at Ms. Kocsis' home, Ms. Kocsis was to return Albus to Ms. Eltibi at an agreed upon date and time. It is also undisputed in the record that Ms. Kocsis failed to follow this agreement, and, therefore, was not entitled to possession of Albus at the time the lawsuit was filed. There is no

---

[1] A dog registration does not establish ownership. Under R.C. 955.01(A)(1), "every person who owns, keeps, or harbors a dog" is required to obtain a license for a dog.
[2] Adoption agreements between an individual and an animal shelter, such as the one here between Ms. Eltibi and the Madison County Humane Society, are binding and enforceable agreements. *See Slodov v. Animal Protective League*, 90 Ohio App.3d 173, 176 (8th Dist.1993). ("The provisions of the agreement are binding on both parties and the [owner] cannot avoid her responsibilities under the adoption agreement[.]")

evidence in the record to suggest Ms. Kocsis was entitled to retain possession of Albus when she made the decision not to return Albus to Ms. Eltibi at the agreed upon time.

{¶20} Viewing the evidence in a light most favorable to Ms. Kocsis, we cannot conclude that a reasonable trier of fact could have found in favor of Ms. Kocsis. The trial court's determination that Ms. Eltibi and Ms. Kocsis were co-owners of Albus is not supported by sufficient evidence. Ms. Eltibi met her burden of establishing sole ownership for her claim in replevin and was entitled to possession of Albus. The record does not contain any evidence that there was ever a transfer of ownership of Albus under R.C. 955.11(B) to Ms. Kocsis, and, therefore, Ms. Kocsis was not entitled to a finding in her favor on Ms. Eltibi's complaint for replevin. While the parties remain free to engage in a visitation schedule for Albus, the record and controlling law require this Court to conclude Ms. Eltibi is the legal owner of Albus and is entitled to recover possession.

{¶21} Ms. Eltibi's first assignment of error is sustained.

### ASSIGNMENT OF ERROR II

**THE JUDGMENT OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD BE REVERSED**.

{¶22} In her second assignment of error, Ms. Eltibi argues the trial court's judgment denying her complaint in replevin was against the manifest weight of the evidence. In light of this Court's resolution of Ms. Eltibi's first assignment of error, Ms. Eltibi's second assignment of error is moot. *See* App.R. 12(A)(1)(c).

III.

{¶23}  Based upon the foregoing, the judgment of the Stow Municipal Court is reversed, and the cause is remanded for proceedings consistent with this opinion, including an order to promptly return the dog, Albus, to Ms. Eltibi.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Stow Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

BETTY SUTTON
FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

J. JEFFREY HOLLAND, Attorney at Law, for Appellant.

RONALD STARKEY, Attorney at Law, for Appellee.